Proof of the fact that a locomotive engine had written on it the words "Southern Railway Company," unsupported by any other fact, was insufficient to authorize the inference that it was owned by the Southern Railway Company, and that it was being operated at the time of the injury by employees of the Southern Railway Company engaged in its business. It was error to overrule the motion for new trial.
 DECIDED MARCH 15, 1940.
J. C. Hullender brought suit against the Southern Railway Company to recover damages alleged to have been sustained by him on account of the negligence of the defendant. The plaintiff alleged that on February 2, 1937, while he was engaged in unloading steel from a freight car on a sidetrack at the Chickamauga Dam in Tennessee, about eight miles north of Chattanooga, a locomotive of the defendant, operated by its employees, came in on the sidetrack where the freight car the plaintiff was unloading was located, coupled with the car, and immediately started moving it forward, without giving to the plaintiff any warning of an intention so to *Page 275 
do; that in getting out of the moving freight car he was, on account of the improper movement of the engine, thrown to the ground and permanently injured; that the defendant, its agents and servants in charge of the engine and train at the time and place, were negligent in backing the engine into the sidetracked freight car while the plaintiff was in the car and engaged in unloading it; in so backing the engine without looking or making any inspection to ascertain whether the car was clear and unloaded, and whether any one was thereon; in backing into the car, and immediately after coupling to it, with the plaintiff on it and engaged in unloading steel therefrom, starting forward with the engine; in failing to give any signal or warning of the intention to move the freight car; in moving it at the time and place; and in suddenly coupling on to the car, and immediately and suddenly pulling it forward at a rapid and dangerous rate of speed, before the car was unloaded, and while it was being unloaded of large and dangerous pieces of steel. The defendant answered, denying the material allegations of the petition.
The plaintiff testified in part, as follows: "As to what happened while we were unloading that car of steel, there was a Southern engine came in and ran in and struck the car, and reversed and went the other way. . . I saw that was a Southern Railway Company engine. As to how I know it was a Southern Railway Company engine; I know it by the marks. It had a mark on the tender and engine. I have worked in railroad yards before I went and worked on the Chickamauga Dam. As to how much experience I have had around railroad yards; not so much as working for the railroad; I have been around unloading cars, loading lumber and stuff and unloading them, and know the engines when I see them. I couldn't have been mistaken as to it being a Southern Railway Company engine. . . I said I saw some writing on the engine. I saw Southern Railway Company and nothing else at all. I didn't notice anything else; wasn't looking for anything else. I saw that right up under the window; it is marked with those letters, and then back on the tender is marked `Southern.' As to how I could see that if I was in the car back of the engine, it came down the track and placed some more cars below that. . . I saw it out there when I got out of the car opposite the track. . . That was after I was hurt. . . As to whether or not on the *Page 276 
former trial of this case Mr. Owens asked me the question `You saw this engine just had `Southern' on it, and that is all you saw?' and I replied, `Yes sir.' I didn't say it just had Southern. I said it had Southern Railway Company on it. . . It had Southern Railway Company on it. I don't know who was operating the engine. I don't know who they were employed by or anything like that, I just know there was a Southern Railway Company engine. . . I saw the engineer on that engine; he was a middle-aged man. . . As to why the words `Southern Railway Company' impressed me; if a man was hurt by a train he would be paying attention." In evidence for the plaintiff were two letters signed "Geo. D. Vass, claim agent," addressed to the plaintiff's counsel, written on stationery headed, "Southern Railway Company, Legal Department." One was dated September 19, 1938, informing the plaintiff's attorney that on account of the illness of the writer he had been unable to keep a previous engagement made by him, and asking the attorney for another engagement. The other was dated September 8, 1939, referred to the suit then pending against the Southern Railway Company, stated that the writer had received no report concerning the plaintiff's accident before the suit was filed, and requested a conference with the plaintiff. The suit was filed on August 4, 1938.
The plaintiff also testified that he received a letter from the "claim agent of the Southern road," and in response came to Dalton, Georgia and met George D. Vass; that Vass was the person defendant's counsel had requested might be allowed to remain in the court-room during the trial as a representative of the Southern Railway Company; that Vass told him he did not have any "showing of this accident, that he always instructed his men to turn in a report at once about anything that happened," which had not been done, and he "said something about the dam, said they was doing a good business up there, and in order not to get knocked out of the work up there he had instructed his men to report any accident that happened at once, and he said they failed to do that;" that Mr. Vass had him come to Dalton, or notified him to come to Dalton, four different times; that he didn't say at any time "It wasn't a Southern train." The plaintiff further testified that the letters above referred to were written after he had turned the matter over to his attorneys, that he did not inform the railroad company *Page 277 
of his accident, but turned the case over to his counsel for that purpose, and that "when Mr. Vass came down here he got a statement from me" Which the plaintiff did not sign. There was evidence that Vass was an assistant claim agent of the C., N. O., T. P. Railway Company.
There was evidence going to show that this short line of railroad track running to the Chickamauga Dam and along the sidetrack whereon was the freight car, the moving of which the plaintiff claims resulted in his injury, was not a part of the tracks of the defendant railway company on which engines and trains of the defendant operated, but was a portion of the tracks of the Cincinnati, New Orleans, and Texas Pacific Railway Company; and that this company was a separate and distinct corporate entity from the defendant. There was also evidence for the defendant tending to establish that the lines of the Southern Railway Company terminate at Chattanooga, and that the Cincinnati, New Orleans and Texas Pacific Railway Company, as a connecting carrier, picks up all passengers and freight proceeding through Chattanooga north. Also, various witnesses testified for the defendant that the locomotive engines of the Cincinnati, New Orleans, and Texas Pacific Railway Company carried the word "Southern" written on their tenders as a trade-name for advertising purposes, and for the purpose of identification of the line as one associated with the Southern Railway Company and a great number of other railway companies, comprising a system known as "Southern Railway System," which is not a corporation, but merely a name for various railways comprising the system; and that no engine of the Southern Railway Company, operated by employees of that company, ever operated over and on the tracks of the Cincinnati, New Orleans, and Texas Pacific Railway Company. There was evidence that a railroad accountant or chief clerk, in charge of adjustment work, served in this capacity for the Cincinnati, New Orleans, and Texas Pacific Railway Company, the Southern Railway Company, and two other railroads.
The jury found for the plaintiff $2250. The defendant moved for a new trial on the general grounds and by amendment added certain special grounds. The judge overruled the motion for new trial, and the defendant excepted.
The negligence alleged was the backing of one of the defendant's engines into a car which the plaintiff was unloading. The only evidence tending to show that the injury was due to the negligence of the defendant's employees was the testimony of the plaintiff to the effect that the engine which struck the car he was unloading had written on it "Southern Railway Company." There was no evidence that the engine was actually owned by the Southern Railway Company; no evidence that it was operated by the employees of the company; no evidence that it was being used in the business of the company; no evidence that it was being operated on the tracks of the company; no other fact which added to the proof as to the name written on the engine which would be sufficient to authorize the inferences that the engine belonged to the defendant, and that it was being operated by an employee of the defendant in the course of his employment.
This court and the Supreme Court have gone no further than to hold that evidence that the defendant was the owner of a vehicle injuring another, and that the person operating it at the time of the injury was in the employ of the defendant, would authorize the inference, or create a prima facie presumption, that the servant was engaged in the master's business and within the scope of his employment. Dawson Motor Co. v. Petty, 53 Ga. App. 746
(186 S.E. 877), and cit. The facts of this case clearly distinguish it from Barnum Bailey Shows v. Himmelweit,17 Ga. App. 85 (86 S.E. 96), and Minter v. Kent, 62 Ga. App. 265
(8 S.E.2d 109), in which the Barnum and Bailey
case is discussed; and also distinguish it from Edgeworth v.
Wood, 58 N. J. L. 463 (33 A. 940). See Clower v. WesternUnion Tel. Co., 18 Ga. App. 775 (90 S.E. 730). The statements made by a claim agent of the defendant, who was also proved to be the claim agent of the railroad on whose tracks the injury occurred, which was another railroad, to the effect that he did not have a showing of this accident, that he always instructed his men to turn in a report at once about anything that happened, that they had not turned it in, that "we" are doing a good business up there, and that in order not to get knocked out of work he had instructed his men to report any accident at once, would have no probative value on the question of the ownership of the engine or tracks, or on the question whether the employees operating the engine were employees of the defendant *Page 279 
engaged in its business at the time of the injury. The evidence was not sufficient to authorize the verdict.
The above ruling also applies to the following erroneous charge of the court: "If you find that on the occasion in question, at the time the plaintiff J. C. Hullender claims to have been injured, if he was injured, by an engine which had on it markings purporting to be the property of the Southern Railway Company, the presumption would arise that it was an engine of the Southern Railway Company, and was being operated at the time by the agents of the Southern Railway Company, and in the prosecution of its business."
It is unnecessary to pass on the other assignments of error. The court erred in overruling the defendant's motion for new trial.
Judgment reversed. Sutton, J., concurs. Stephens, P. J.,dissents.