## RECONSTRUCTION FINANCE CORPORATION v. MERRYFIELD et al.

No. 3852.

Circuit Court of Appeals, First Circuit.

April 8, 1943.

Harry Bergson, of Boston, Mass., John E. Tobin and Devine & Tobin, all of Manchester, N. H., for appellant.

Omer H. Amyot, of Manchester, N. H., for appellees.

Before MAHONEY and WOODBURY, Circuit Judges, and HEALEY, District Judge.

MAHONEY, Circuit Judge.

This case is here on appeal from a judgment of the district court in favor of the appellees. On June 24, 1941, the appellees filed a complaint against the F. M. Hoyt Shoe Corporation, hereinafter called "Shoe Corporation", and the Reconstruction Finance Corporation, hereinafter called "R. F.C.", for unpaid overtime compensation and for liquidated damages pursuant to the applicable provisions of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 203 et seq. On July 25, 1941, the Shoe Corporation filed a motion to dismiss on the ground that it was not engaged in interstate commerce and on the same date the R.F.C. filed a motion to dismiss because no valid or effective service had been made upon it. There was a hearing on defendants' motions on September 23, 1941. In its opinion of November 6, 1941, Merryfield v. F. M. Hoyt Shoe Corp., 41 F.Supp. 794, the District Court pointed out that the hearing was not strictly confined to the motions but developed into arguments on questions of law involved in the action and oral testimony was taken at that time. The court denied the motion of R.F.C. and dismissed the complaint against the Shoe Corporation and R.F.C. on the ground that the employees were not engaged in interstate commerce. An appeal was taken and on the authority of Kirschbaum v. Walling (Arsenal Building Corporation v. Walling), companion cases, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638, we reversed the District Court and remanded the case for fur-

ther proceedings. 1 Cir., 128 F.2d 452. Thereafter, the R.F.C. filed a motion on August 28, 1942, to dismiss the action on the ground that it was the United States within the meaning of the Act. Appellees filed an answer to this motion and sought its dismissal on the ground that the motion was dilatory; that it was too late to raise the point under Rule 12(a), (b), (g) and (h) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and for the further reason that the R.F.C. was not the United States. Appellees moved for judgment on the pleadings under Rule 12(c).

On October 9, 1942, the district judge in a written opinion expressly found on the authority of Reconstruction Finance Corporation v. J. C. Menihan Corporation, 1941, 312 U.S. 81, 61 S.Ct. 485, 85 L.Ed. 595, and Keifer & Keifer v. Reconstruction Finance Corporation, 1939, 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784, that the R.F.C. was not the United States for the purposes of this suit. Judgment was entered for the appellees on October 13, 1942. On November 2, 1942, R.F.C. filed its notice of appeal and on November 13, 1942, it filed in the district court a motion to dismiss the action on the ground that the evidence failed to indicate that "plaintiffs were for the period alleged in their petition employees of the said defendant". Appellees took no objection and made no answer to the filing of this motion. The district court entertained the motion and on November 18, 1942, in a written opinion dismissed it. The court construed the motion as a request for a specific finding as to whether or not the appellees were employees of R.F.C. or the Shoe Corporation. It found as a fact that the "plaintiffs were working for the F. M. Hoyt Shoe Corporation but the business of that company could not be carried on without the financial aid of the R.F.C. Upon these facts I hold that the Reconstruction Finance Corporation is so closely connected with the F. M. Hoyt Shoe Corporation and its tenants engaged in manufacturing goods for interstate shipment that it comes within the purview of the Fair Labor Standards Act of 1938".

In a statement of points relied upon on appeal filed December 2, 1942, the R.F.C. assigned as error: (1) the District Court's denial of its motion to dismiss on the ground that it was the United States; and (2) its failure to rule that R.F.C. was not an employer within the Act.

At the oral argument before us and in its brief, appellees took the position that the motion to dismiss on the ground that R.F.C. was the United States was dilatory and that it cannot be considered at this time because it was made too late in the proceedings. It is clear that the District Court by its consideration of this issue on its merits did not consider the motion to be dilatory. The view we take of this case, however, makes a consideration of this question unnecessary. Appellees took the further position that the motion to dismiss filed by appellant on November 13, 1942, was out of time, that the District Court should not have entertained it and that it is now too late for us to consider it. As we pointed out in our resume of the travel of this case, the appellees filed no answer to the motion and apparently as it appears from the record made no objection to the filing of it by the appellant. The position of the appellees is that under Rule 12 (b) of the Federal Rules of Civil Procedure, appellant's motion was too late, and that judgment having been entered appellant waived its right to raise an objection of this nature. We do not find that Rule 12 is applicable to the situation here presented. Rule 12 provides for defenses and objections and for judgment on the pleadings. 12(b) requires responsive pleading except that certain defenses may be made at the option of the pleader by motion such as: (1) lack of jurisdiction over the subject matter; (2) lack of jurisdiction over the person; (3) improper venue; (4) insufficiency of process; (5) insufficiency of service of process; and (6) failure to state a claim upon which relief can be granted. 12 (g) and (h) provide respectively for consolidation of motions and for waiver of defenses. It is true, for example, that under Rule 12(b) a party who has made a motion for dismissal on the ground that his adversary has failed to state a claim upon which relief can be granted may not thereafter file a motion for a dismissal on the ground of improper venue. In such a case the first motion would constitute a waiver of the right to make the second motion. The motion by appellant filed on November 13, 1942, was considered by the District Court as a motion to make a specific finding and it so ruled. In view of the limited way in which the court treated this motion, we believe it is proper for us on appeal to consider this specific finding assigned as error by appellees. We are thus confronted with the problem whether the District

Court was correct in its ultimate conclusion that R.F.C. was an employer of the appellees involved in the instant case.

In order to understand clearly the issue before us we state the facts in some detail. Appellees were employed at different times from October 1, 1940, to June 21, 1941, as watchmen, firemen and maintenance men. It is for these periods that they seek overtime compensation, liquidated damages, costs and attorneys' fees. In 1934, the Shoe Corporation was engaged in the manufacture of goods in interstate commerce and in May of that year borrowed $112,500 from R.F.C. It gave as security a mortgage on its real estate. The Shoe Corporation leased some of its space in its factory to other tenants and in May, 1936, after it had ceased manufacturing it leased space which it had occupied to other manufacturers of shoes and associated industries engaged in interstate commerce. Shortly after it ceased manufacturing it assigned all its rents to R.F.C. A suspended credit account of the Shoe Corporation was set up in the Federal Reserve Bank in Boston, with an agreement that all maintenance expenses of the plant were to be paid from that account and the balance was to be used in payment of principal and interest on the loan from R.F.C.

Mrs. Olive Matthews, Secretary of the Shoe Corporation, testified without contradiction that during the period alleged in the complaint she collected rents and forwarded them to the R.F.C. in Boston where they were placed in the suspended credit account. She had authority from John D. Murphy, President and Treasurer of the Shoe Corporation, to hire, fix rates of wages and to discharge the appellees without conferring with R.F.C. in any way. She kept a record of their time and forwarded it to R.F.C. R.F.C. drew checks in the names of the employees against the moneys received from the rents and sent them to her to be given to the appellees. They signed receipts for their pay to the Shoe Corporation and these were returned to R.F.C. At times she paid them out of petty cash and received a check from R.F.C. to replenish that account. Taxes and insurance were paid directly by checks of R.F.C. drawn on the suspended credit account. In all problems concerning help, purchases and maintenance of the property, she conferred with Murphy. Her only contact with R.F.C. was in forwarding the rents and receiving checks for the payment of expenses. Murphy who had been President and Treasurer of the Shoe Corporation since July 1, 1931, testified that the Shoe Corporation certified expenses that occurred in the maintenance of the property and that no major expenses were incurred unless the funds in the suspended credit account were adequate. He negotiated all leases without conference with or approval by R.F.C. He stated that R.F.C. could make no arbitrary deductions from the credit account without his permission. Any repairs that were made to the premises were authorized by him. He flatly asserted that the Shoe Corporation was in complete control of the premises and that any authority exercised by R.F.C. was consistent with its position as a mortgagee. Its control of the funds resulted from the assignment of the income derived from the rents.

■ As we pointed out in the statement of facts, the District Court did not find specifically that R.F.C. was for the period in question an employer of appellees. The judgment against R.F.C. was based upon its financial interest in the affairs of the Shoe Corporation. Unless we determine that such an interest creates an employer-employee relationship or that the applicable sections of the Act bring R.F.C. within its purview as an employer we must reverse the District Court. The cases are legion which have defined and commented upon the traditional concept of the employer-employee relationship. As was said in Williams v. United States, 7 Cir., 1942, 126 F. 2d 129, 132: "There seems to be no dispute but that the employer-employee relationship exists only where the person, for whom the work is done, has the right to control and direct the work, not only as to the result to be accomplished by the work, but also as to the details and means by which that result is accomplished. Singer Mfg. Co. v. Rahn, 132 U.S. 518, 10 S.Ct. 175, 33 L.Ed. 440; Jones v. Goodson, 10 Cir., 121 F.2d 176, 179." Madison v. Phillips Petroleum Co., 5 Cir., 1937, 88 F.2d 515, certiorari denied 301 U.S. 703, 57 S.Ct. 946, 81 L.Ed. 1358; McLamb v. E. I. Dupont de Nemours & Co., 4 Cir., 1935, 79 F.2d 966; Commissioner of Internal Revenue v. Modjeski, 2 Cir., 1935, 75 F.2d 468.

■ The testimony of Mrs. Matthews and Murphy is clear that in the matter of hiring and discharging employees, directing them in their work and fixing their wages, the Shoe Corporation, through its officers, was in complete control and did not con-

sult with nor receive advice from R.F.C. R.F.C. did not attempt to interfere with the internal management of the Shoe Corporation in so far as these appellees were concerned and the evidence indicates that it did not have the power to do so. The fact that R.F.C. drew checks upon the suspended credit account held in the name of the Shoe Corporation and that these checks were used in the payment of the employees does not produce an employer-employee relationship. Appellees in their brief concede that we do not have here all the usual common-law incidents of master and servant or employer and employee. We are, therefore, constrained to hold that the District Court could not on the basis of its own finding conclude that R.F.C. was an employer of these appellees in the ordinary sense that that term is used.

We must, therefore, look to the statute [1] to determine whether there is anything in its language which requires a holding that R.F.C. is liable for the payment of unpaid overtime compensation and liquidated damages to these employees.

■ Appellees contend that R.F.C. suffered or permitted these employees to work for it within the meaning of these words as used in the Act. We are of the opinion that this position is unsound. R.F.C. as a mortgagee could not have permitted or suffered these employees to work for it unless it can be said that it was in control of the premises and that it was to it that these employees gave their services. Stated differently, the very facts which determine whether R.F.C. was in control of the premises also determine whether Section 3(g) is applicable. The view we take of the case is that the Shoe Corporation until the time of the foreclosure remained in charge of the premises and directed its employees. In Bowman v. Pace Co., 5 Cir., 1941, 119 F. 2d 858, 860, the question was raised whether the corporation whose premises were watched by a night watchman suffered or permitted him to work for it. The court determined "if one has not hired another expressly, nor suffered or permitted him to work under circumstances where an obligation to pay him will be implied, they are not employer and employee under the Act." Since we have concluded that R.F.C. was

not in control of the premises, it follows that it was in no position to suffer or permit these employees to work for it.

■ Appellees contend that R.F.C. is an employer because it acted directly or indirectly in the interest of the Shoe Corporation in relation to its employees. This conclusion is based upon the financial arrangement between R.F.C. and the Shoe Corporation. This also appears to have been the reasoning of the district court. It may be that this definition of an employer has broadened the concept of employer-employee but even if it has we are of the opinion that the relationship of R.F.C. to the Shoe Corporation does not bring it within the express language of the Act. We may say in passing that two cases recently decided, Bowman v. Pace Co., supra, and Maddox v. Jones, D.C.1941, 42 F.Supp. 35, take the view that Congress did not intend to create new wage liabilities or to change the familiar rules laid down for the determination of the employer-employee relationship.

In the case before us the facts show that R.F.C. in order to protect its investment took an assignment of the rents from the Shoe Corporation and as part of that assignment an agreement was entered into by the parties whereby the maintenance expenses were to be deducted from the rents. This included the payment of wages to these appellees. As we have said, R.F.C. did not become an employer merely because it drew checks upon the suspended credit account to pay these employees. It was only the net rent which it received from the property which was deducted from the obligation of the Shoe Corporation. At most this was a bookkeeping transaction agreed upon in order to protect R.F.C. and to permit it to maintain close vigilance over the affairs of the Shoe Corporation. If the property produced no income R.F.C. would not have expended any further sums for the payment of the wages of these employees. The original loan of $112,500 is actually the only investment which R.F.C. made. All other transactions entered into by the parties were only to insure R.F.C. some return upon its investment. From these facts, we do not see how it can be said that R.F.C. acted directly or indirectly

---

[1] Sec. 203:

"(d) 'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee."

"(e) 'Employee' includes any individual employed by an employer."

"(g) 'Employ' includes to suffer or permit to work."

in the interest of the Shoe Corporation in relation to these appellees. We, therefore, conclude that R.F.C. cannot be held as an employer within the terms of the Act.

Appellees cite Williams v. Jacksonville Terminal Co. (Pickett v. Union Terminal Co.), 315 U.S. 386, 387, 62 S.Ct. 659, 86 L. Ed. 914; Fleming v. Palmer, 1 Cir., 1942, 123 F.2d 749; Cottrell v. Wetterau Grocery Co., 1 W.H.R. 744; Fleming v. Buettner & Co., Inc., 5 W.H.R. 279, and Mid-Continent Pipe Line Co v. Hargrave, 10 Cir., 129 F.2d 655, as presenting facts less favorable to the employees in which the courts have held that an employer-employee relationship existed. All the cases cited are clearly distinguishable and have no bearing on the issues before us.

The judgment of the District Court is reversed and the case is remanded to that court for further proceedings not inconsistent with this opinion; the appellant recovers costs of appeal.