## DE BORD v. PROCTOR & GAMBLE DISTRIBUTING CO.

### No. 10933.

Circuit Court of Appeals, Fifth Circuit.

Nov. 7, 1944.

Rehearing Denied Dec. 15, 1944.

B. P. Gambrell, of Atlanta, Ga., and J. Ralph Rosser, of LaFayette, Ga., for appellant.

Graham Wright, of Rome, Ga., and Sidney Smith, of Atlanta, Ga., for appellee.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

An automobile, in which plaintiff was riding as a guest, collided with a truck owned by defendant, and this suit followed. At the conclusion of the evidence, defendant moved for a directed verdict on the ground, among others, that "the evidence showed without conflict that the operator of the truck at the time of the collision was not the servant or employee of defendant but of an independent contractor,[1] White Star Transit Company". The District Judge, of the opinion that this presented no issue of fact but only one of law, reserved judgment on it until after verdict, and then entered judgment for defendant. Here appellant attacks, appellee defends, that judgment. We agree with appellee.

---

[1] It was established that one Arleigh Scott, an employee of White Star Transit Co., a corporation engaged in the business of transporting cars and trucks either on large trucks or by driving them away, was in charge and control of the truck at the time of the collision.

Two witnesses, Williams, representing the defendant company, and Reiger, representing White Star Transit Co., gave testimony as to the arrangement between White Star Transit Co. and defendant, under which Scott for White Star had taken the truck in charge.

Williams testified: "I recall a transaction in November of 1941 between Proctor & Gamble and White Star with respect to the movement of vehicles belonging to Proctor & Gamble. At that time we wanted White Star to bring a station wagon from Cincinnati to Rome, Georgia, and turn it over to a crew manager here, and at the same time pick up a truck which the crew manager had in Rome and drive it back to Cincinnati. I contacted White Star Transit Company's office in Cincinnati, and talked to Mr. Allen, who was their manager in Cincinnati. I contacted Mr. Allen through Mr. Reiger. I talked to Mr. Allen, with White Star, after I talked to Reiger, and asked him if he could handle the transportation of the cars in-

56

The testimony of the witnesses as to who was in charge and control of the truck at the time of the accident, as to how he got control of it, and as to whose employee he was is without dispute, and no fact or circumstance in evidence in any way impeaches that testimony. The district judge was right then in holding that

volved, and he said he could, and then I asked him what they would charge us to transport the truck, so that we could compare it against the cost of having our own men drive the trucks back and forth, and he gave me the price which I compared with what I had already computed to be our own cost if we should transport it ourselves, and decided then that it would be cheaper to have White Star handle it. Then I gave him instructions as to where to pick up the station wagon in Cincinnati, and to whom it should be delivered in Rome, also I gave him instructions over the phone regarding the truck which was to be picked up in Rome and driven back to Cincinnati, informing him, of course, that he was to bill us for the transportation after he had completed the transfer. They based the price on a mileage basis, so much per mile. As to the invoice being shown me of the White Star Transit Company, apparently paid November 25, 1941, G. C. Cody, 6412541, 909 North Broad St., Rome, Ga., Transportation $42.65, yes, that was the price he quoted me for bringing that down and delivering it to Cody."

Reiger testified: "I recall the particular movement of this car belonging to Proctor & Gamble Distributing Co. in November, 1941 * * *. We had been moving units for them in the past. Mr. Williams of the Proctor & Gamble Co. called me. He just told me he had a unit to be moved. In other words, he had two, one from Cincinnati here, and from here back to Cincinnati. I turned him over to the company manager, a man by the name of Allen. A verbal contract was made between them over the phone."

Reiger also testified: "As to whether in connection with this particular job any instructions were given me by Proctor and Gamble other than where to deliver and what to pick up, no, that was up to me. I instructed the driver as to the route he was to take. White Star Transit paid that driver. White Star Transit controlled the operation of the car and furnished gasoline for the trips. Those drivers were paid by White Star Transit by the mile, four and one-half cents a mile and in addition to that, we allowed them money for gasoline and food. As to what we based our allowance for gasoline on, well, they struck an average of what it would take, he was given a $25.00 advance check

to buy gasoline going down and coming back. We were paid for the movement south shown by this invoice but we never got paid for the return, we didn't complete the movement. Shortly after this wreck occurred the matter was taken up by Proctor & Gamble distributing Company with the White Star along the question of liability. Proctor & Gamble had nothing to do with this car from the time it was turned over to Scott by Cody until the wreck. They had nothing to do with Scott's movements once he picked up from the man Cody here. —They didn't have a right to fire Scott, they had no control over him at all. They didn't have a right to direct him as to what routes he should take, that was my job. All of our rates were based on mileage, and we figure the shortest possible mileage." " * * * I selected Arleigh Scott as driver. Proctor & Gamble had nothing to do with his selection as a driver. They never knew how it was moved or by whom."

Scott testified that he was a transit driver for a drive away concern called the White Star Transit Company working out of Cincinnati, and that on November 13, 1941, the date the accident occurred, he was driving for that company. He further testified that White Star Transit Co. paid him for his work a certain amount for each mile he drove a car. The company bought the gasoline. Instruction as to handling cars was generally given by the dispatcher of the company, Jack Reiger. When he left the White Star Transit Company office on the trip on which this accident occurred, the bills for both units were given him, and Reiger gave him instructions as to where he was to go and what car he was to drive on the trip he started on from Cincinnati. He testified further: "I left Cincinnati, the afternoon of November 11th. I drove the station wagon to Rome, Ga., and delivered it to a Mr. Cody, manager of an advertising crew for Proctor & Gamble. He signed the receipt for the station wagon. I took it back with me and turned it into the office. He and I both signed bills for the other car involved in this accident, I, as receiving it from him, and he that he had accepted it. I did not at any time receive any instructions from Proctor & Gamble with respect to the driving of automobiles or in respect to any other matters."

the evidence showed as matter of law that there was an independent contract and that the injury occurred in the course of its carrying out by the contractor. He was right, too, in determining that plaintiff failed to make out a case of liability.

■ In Georgia, as in most of the states, the owner of an automobile is not responsible for injuries done by it unless they are caused by him or by some one for whose action he, as employer, is responsible. Ga.Code, Sec. 105-501 provides: "The employer generally is not responsible for torts committed by his employee when the latter exercises an independent business, and in it is not subject to the immediate direction and control of the employer." When then, as here, an owner contracts with another as independent contractor to cause his car to be driven or transported to a specified place, to be there redelivered to him, and, pursuant to the contract, delivers the car to the representative of the contractor, from that time on until the car is redelivered to the owner, the car is not in the owner's custody or control, and the owner is not liable for injuries caused by the servants or agents of the contractor while in control of or operating it.[2]

■ Appellant does not at all contest the principle that where there is an independent contract, the contractor, and not the owner, is liable for the negligence of the contractor's employees. He insists that the case made on this evidence is not one of independent contract under which White Star was to transport the truck in question, but, within the principle of Reeves v. Columbus Electric, etc., Co., 32 Ga.App. 140, 122 S.E. 824; Liberty Mut. Ins. Co. v. Kinsey, 65 Ga.App. 433, 16 S.E.2d 179; Continental Casualty Co. v. Payne, 56 Ga. App. 873, 194 S.E. 428, it is one in which White Star furnished one of its employees to Proctor & Gamble, under a contract of special employment by which the employee so furnished became the servant of Proctor & Gamble. Nothing in the evidence lends any support to this view. Indeed, completely negativing it, the evidence makes out a clear and simple case of an independent contract entered into after defendant had compared the cost of getting the car to the desired point by using its own employees with that charged it by the car moving concern.

■ Nor is appellant on sounder ground in his position that since White Star held no license from the commission to carry in to and out of Georgia, the contract for the carriage of the truck was illegal and the defendant was liable for acts done by the carrier in the course of performing it. Without determining whether the failure of a motor carrier to comply with the Federal Motor Carrier Act renders a contract for transportation unenforcible (but see Kingman Distributing v. Davis, 64 Ga.App. 764, 765, 14 S.E.2d 242), we think it quite plain that the owner had no duty to ascertain whether the motor carrier had complied with the act, and that the acts of the carrier in performing the contract subjected the owner to no liability, Marion Machine, etc., Co. v. Duncan, 187 Okl. 160, 101 P.2d 813. But whether so or not is beside the point. The liability here asserted is not one for driving an automobile without a license, but one for damages proximately resulting from the negligence of one for whose action the defendant is responsible. There was no proximate causal connection between driving the car without a license and the injury. The White Star itself would not have been liable for injuries caused while the car was being so driven unless there was actionable negligence proximately causing them, Aycock v. Peaslee-Gaulbert, etc., Co., 60 Ga.App. 897, 5 S.E.2d 598; Holbrooks v. Ford Rental System, 34 Ga.App. 588, 130 S.E. 363; Reeve Bros. v. Guest, 5 Cir., 131 F.2d 710. For a much stronger reason the defendant would not be, for the evidence showed affirmatively that the truck which plaintiff claims caused his injuries was not in the control of, or being driven by, the defendant or by some one in his employ and under his direction and control.

■ There is nothing mysterious or re-

[2] Georgia Power Co. v. Gillespie, 49 Ga. App. 768, 176 S.E. 786; Simmons v. Beatty, 61 Ga.App. 759, 7 S.E.2d 613; Graham v. Cleveland et al., 58 Ga.App. 810, 200 S. E. 184; Southern R. Co. v. Hullender, 62 Ga.App. 274, 8 S.E.2d 674. Cf. Great American Indemnity Co. v. Fleniken et al., 5 Cir., 134 F.2d 208; Bowman v. Pace Co., 5 Cir., 119 F.2d 858; Reconstruction Finance Corporation v. Merryfield et al., 1 Cir., 134 F.2d 988; Whatley v. Great Southern Trucking Co., 5 Cir., 123 F.2d 143; Brooks et al. v. Johnson et al., 72 P.2d 194, 22 Cal.App. 2d 618.

condite about the theory on which liability was denied in this case. The burden was on the plaintiff to prove that the defendant, or some one for whose action he was responsible, was negligent. He did not prove this. On the contrary, the evidence established that the negligence complained of was not that of the defendant or its servants but of a servant of an independent contractor whom the defendant had employed to do a job for him, reserving no direction or control over the manner or means of doing it. The case, therefore, failed because the element necessary to recovery, that the defendant's conduct has been wrongful, had not been proven. The law does not prohibit, it permits, the making of independent contracts. The only thing the defendant did here was to make such a contract. It reserved no control over, it had nothing to do with, its performance. For acts of an employee of the contractor causing damage, it is the contractor and not the owner who must be looked to. The judgment was right. It is affirmed.