## BOWMAN v. PACE CO.
### No. 9769.

Circuit Court of Appeals, Fifth Circuit.
May 14, 1941.

John M. Coe, of Pensacola, Fla., for appellant.

Wm. H. Watson and C. J. Brown, both of Pensacola, Fla., for appellee.

Before FOSTER, SIBLEY, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

Appellant R. M. Bowman sued to recover $1782 from appellee the Pace Company as additional wages and for overtime under the Fair Labor Standards Act, 29 U.S.C.A. § 216(b). A verdict was directed against him. The questions are whether there was evidence that he was an employee of the Pace Company, and was engaged in interstate commerce.

It appears that the Company did a large wholesale grocery business with headquarters in Pensacola, Florida, and a branch store in Alabama. By its own trucks it hauled goods from Pensacola to the Alabama branch store, and also delivered goods directly to customers in Alabama, about fifteen percent of its business being thus done across the State line. About ninety percent of its goods it obtained from other States, some of them being brought into Florida by its own trucks. The office and warehouse at Pensacola were not kept open at night or on Saturday afternoons, Sundays or holidays, and during those times it had prior to Oct. 1, 1938, kept a watchman on duty, paying him $12 per week. Exactly what he did does not appear.

Several years prior to Oct. 1, 1938, one Gene Forsyth, who had been Director of Public Safety at Pensacola and had also worked for the United States in connection with the Bureau of Internal Revenue and the Customs Service, started a business which he styled Gene Forsyth Detective Service, wherein he furnished watchman service to a number of plants and warehouses in Pensacola. He hired watchmen and personally made night rounds to see that his men were on duty. He solicited the business of the Pace Company and was at first refused, but on Oct. 1, 1938, obtained a written contract by which he agreed "to furnish a minimum of fifteen hours watchman service to the Pace Company's main office located at 203 E.

860

Garden St., Pensacola, Florida, as long as satisfactory service is rendered. The Pace Company on their part agree to pay the Gene Forsyth Detective Service the sum of $58 per month." Forsyth was asked to retain the aged man who was then employed as watchman and did so for some months, but finally discharged him. He then, on application from Bowman, hired Bowman at $10 per week on March 15th, 1939. Bowman understood he was to do watching at the Pace Company's place, that he was being hired and would be paid by Forsyth, but was told that the Pace Company would instruct him just what to do. Forsyth did pay him each week as agreed. When Bowman got ill he went to Forsyth to be relieved from duty. At another time Forsyth wished to transfer him to another place. Bowman recognized that Forsyth had the right to do it, but argued him out of it, as Bowman had fixed himself a comfortable room with a radio on the Pace Company's premises. By the direction of the Pace Company Bowman, besides being present on the premises, kept a record of the arrival and departure of trucks while he was on duty; gave the drivers of those departing the clip of bills of the goods they carried, and received from those coming in their bills to be turned into the office in the morning. On some occasions, especially on Saturday afternoon, he had delivered pay envelopes and gotten receipts from such drivers and had taken charge of money brought in by them. He testified also that he was required to keep up with the lubricating of the trucks each two weeks, telephoning the persons who did the lubrication of the arrival of the trucks which needed it. The office representatives of Pace Company minimized these activities, denying that they had requested some, asserting that others were occasional and done for accommodation, and as incidental to the watchman's job. Forsyth testified he knew nothing about them and they were not required by his contract. Everyone testified that the contract of Oct. 1, 1938, was made in good faith without any discussion or thought of the Fair Standards of Labor Act, 29 U.S.C.A. § 201 et seq., which was to go into effect Oct. 24, 1938. The Pace Company gave effect to the Act as to all the men it hired.

The Act, Section 6, 29 U.S.C.A. § 206, requires: "Every employer shall pay to each of his employees who is engaged in commerce * * * wages at the following rates". Section 3, 29 U.S.C.A. § 203, states that "'employee' includes any individual employed by an employer," and that "'employ' includes to suffer or permit to work." The Pace Company was engaged in interstate commerce, and so were its trucks and truck drivers. If the Company employed Bowman to assist about the business of the trucks and drivers, he could be considered as himself engaged in commerce, under the analogy of the cases on the point decided under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. There is, however, a diversity of opinion as to whether an employee who is purely a watchman is engaged in the commerce whose instrumentalities he guards. See 45 U.S.C.A. § 51 and cases cited in notes 162, 167.

The strongly contested issue is whether he was the employee of the Pace Company at all. If not, he cannot recover of that Company. It is not the purpose of the Fair Labor Standards Act to create new wage liabilities, but where a wage liability exists, to measure it by the standards fixed by law. If one has not hired another expressly, nor suffered or permitted him to work under circumstances where an obligation to pay him will be implied, they are not employer and employee under the Act. If the Pace Company, in order to evade the Act, colluded with Forsyth to interpose him as an apparent independent contractor, we would hold him the agent of the Pace Company to hire and pay the watchman, so that Bowman would be the employee of the Pace Company. While that is alleged here, the proof wholly fails to sustain it, and demands a finding that Forsyth, being in that line of business, on his own account contracted with the Pace Company for a monthly consideration to maintain satisfactory watchman service at these premises; and on his own account hired Bowman at a weekly wage to watch there, putting him under the direction to some extent of the Pace Company to insure that the service should be satisfactory. The hiring, transferring, or discharging of Bowman was Forsyth's affair. Bowman could and did look to Forsyth alone for his pay. If the employment as watchman comes under the Act, Forsyth owes him the minimum wage, for he is Bowman's employer. Instead of using only one man to furnish the service contracted for, Forsyth could have hired other men to work in eight-hour

shifts, or done the work himself. It would be most unjust to enforce the overtime rates, which make up a large part of Bowman's claim, against the Pace Company, who had no control over this matter.

The conclusion that Bowman is not the employee of the Pace Company is supported by the decisions under the Federal Employers' Liability Act, § 1, 45 U.S.C.A. § 51. It was held that the word should be taken in its natural sense, and did not include among the railroad's employees the porters on Pullman cars who were hired by the Pullman Company, though they served the railroad's passengers, and sometimes took up the tickets of late passengers. Robinson v. Baltimore & Ohio R. R., 237 U.S. 84, 35 S.Ct. 491, 59 L.Ed. 849. And a similar view was taken about express company employees working on trains under an arrangement with the railroad. Wells Fargo & Co. v. Taylor, 254 U.S. 175, 41 S.Ct. 93, 65 L.Ed. 205. And one was not an employee of the railroad company who contracted to handle by himself and by his employees the coal for the company's engines and to remove and dispose of cinders, though he was engaged in commerce and got instructions about the performance of the work from the yardmaster; it was held there was not even a jury issue about it. Chicago, Rock Island & Pac. R. R. v. Bond, 240 U.S. 449, 36 S.Ct. 403, 60 L.Ed. 735.

But it is argued that Bowman was so far under the orders of the Pace Company as that Forsyth was not an independent contractor, citing especially 39 C.J., Master and Servant, p. 38; Singer Mfg. Co. v. Rahn, 132 U.S. 518, 10 S.Ct. 175, 33 L.Ed. 440, and Western Express Co. v. Smeltzer, 6 Cir., 88 F.2d 94, 112 A.L.R. 74. These cases, and those cited by C. J., relate to liability for personal injury to members of the public or to the workers, and not to a liability to pay wages. If one has full direction over the conduct of his business done by another, it is just to hold him responsible to any person who has been injured by a misconduct of the business; but it does not follow at all that the liability for wages is thereby shifted. Wages are due according to principles of contract, not of tort. See 2 Labatt, Master and Servant, 2d Ed., §§ 665, 680.

We see no ground on which Bowman in respect of his wages can claim to be an employee of the Pace Company unless it be that in addition to his service as watchman, for which he was employed by Forsyth, he rendered services outside his duties as watchman at the request of the Pace Company for which the Pace Company owes him. But he has never asserted such a secondary employment, and does not allege it in his petition. And if such a claim had been presented there is a total lack of evidence as to how many hours he devoted to this extra service. The jury could have computed no verdict upon such a claim.

The court did not err in directing the verdict for the defendant.

Affirmed.