**GULF KING SHRIMP COMPANY,**
Appellant,

v.

**W. Willard WIRTZ, Secretary of Labor, United States Department of Labor,**
Appellee.

No. 25695.

United States Court of Appeals
Fifth Circuit.

Feb. 10, 1969.

Edmond J. Ford, Jr., Corpus Christi, Tex., for appellant.

Bessie Margolin, Assoc. Sol., Dept. of Labor, Robert E. Nagle, Atty., Dept. of Labor, Carin Ann Clauss, Atty., Dept. of Labor, Washington, D. C., for appellee.

Before GEWIN, PHILLIPS* and GOLDBERG, Circuit Judges.

GOLDBERG, Circuit Judge:

We consider here the propriety of an injunction issued in connection with the employment of the underaged in the beheading of shrimp. The injunction arises from a suit brought by the Secretary of Labor against appellant, Gulf King Shrimp Company (Gulf King), for alleged violations of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. At the conclusion of the trial, the district court made findings of fact and conclusions of law which found that Gulf King had violated the prohibition against the employment of "oppressive child labor," [1] had failed to maintain adequate

---

\* Judge HARRY PHILLIPS of the Sixth Circuit, sitting by designation.

1. 29 U.S.C.A. § 212.
 \*  \*  \*  \*  \*

(c) No employer shall employ any oppressive child labor in commerce or in the production of goods for commerce or in any enterprise engaged in commerce

employment records,[2] and had in some instances not complied with the minimum wage requirements of the Act.[3] The Court enjoined Gulf King from violating the child labor and record-keeping provisions of the Act, but refrained from enjoining future minimum wage violations in the conviction that proper compliance with the record-keeping provisions would insure the payment of the minimum wage. Gulf King then perfected this appeal. Concluding as we do that the injunctive order has factual and legal impregnability, we affirm.

■ Gulf King is the largest shrimp processor at Conn Harbor, Aransas Pass, Texas. It processes, packages and ships shrimp to points outside of Texas, and is therefore within the coverage of the Fair Labor Standards Act.[4]

The shrimp which Gulf King uses in its processing operation come from shrimp boats that ply the waters of the Gulf of Mexico and Corpus Christi Bay. When the shrimp boats dock, local residents, often in family groups, present themselves at Gulf King's business establishment and take their places at a large

---

or in the production of goods for commerce.
29 U.S.C.A. § 215.

   (a) After the expiration of one hundred and twenty days from June 25, 1938, it shall be unlawful for any person—

    *    *    *    *    *

   (4) to violate any of the provisions of section 212 of this title;
29 U.S.C.A. § 203.

    *    *    *    *    *

   (*l*) "Oppressive child labor" means a condition of employment under which (1) any employee under the age of sixteen years is employed by an employer (other than a parent or a person standing in place of a parent employing his own child or a child in his custody under the age of sixteen years in an occupation other than manufacturing or mining or an occupation found by the Secretary of Labor to be particularly hazardous for the employment of children between the ages of sixteen and eighteen years or detrimental to their health or well-being) in any occupation, or (2) any employee between the ages of sixteen and eighteen years is employed by an employer in any occupation which the Secretary of Labor shall find and by order declare to be particularly hazardous for the employment of children between such ages or detrimental to their health or well-being; but oppressive child labor shall not be deemed to exist by virtue of the employment in any occupation of any person with respect to whom the employer shall have on file an unexpired certificate issued and held pursuant to regulations of the Secretary of Labor certifying that such person is above the oppressive child-labor age. The Secretary of Labor shall provide by regulation or by order that the employment of employees between the ages of fourteen and sixteen years in occupations other than manufacturing and mining shall not be deemed to constitute oppres-

sive child labor if and to the extent that the Secretary of Labor determines that such employment is confined to periods which will not interfere with their schooling and to conditions which will not interfere with their health and well-being.

**2.** 29 U.S.C.A. § 211.

    *    *    *    *    *

   (c) Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder.
29 U.S.C.A. § 215.

   (a) After the expiration of one hundred and twenty days from June 25, 1938, it shall be unlawful for any person—

    *    *    *    *    *

   (5) to violate any of the provisions of section 211(c) of this title, or any regulation or order made or continued in effect under the provisions of section 211(d) of this title, or to make any statement, report, or record filed or kept pursuant to the provisions of such section or of any regulation or order thereunder, knowing such statement, report, or record to be false in a material respect.

**3.** 29 U.S.C.A. § 206.

**4.** 29 U.S.C.A. § 203.

    *    *    *    *    *

   (b) "Commerce" means trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof.

table in the "heading shed." Here shrimp that have been carried by conveyor belt from the boats to the shed are dumped on a beheading table where workers decapitate them by hand. The body parts go into a trough running down the center of the table and are flumed in chilled water into a basket; then boxed, iced, and sent to market. The heads are put into fourteen-quart buckets, and when a bucket is filled, the worker takes it to a "counter" or "puncher" who credits the header for his work by punching a hole in a card with the worker's name on it. The worker then returns to the table and his beheading. For each bucket he brings to the "puncher," the worker receives an additional credit. At the end of the week his card is examined and he is paid on a per bucket basis.

Gulf King employs about 100 headers at a time during its peak season. While each header is supposed to have his own "heading card," the district court found that it was not unusual for several members of a single family to work under only one card. The practice is significant. It not only placed Gulf King in danger of violating the record-keeping requirements of the Act,[5] but on numerous occasions it permitted minors under the age of sixteen to work on Gulf King's premises without a formal employment agreement and without appearing on the company payroll. By working on the card of a parent or older brother or sister, these minors hoped to do the same work as other headers, but to remain anonymous. Their buckets, or the buckets which they helped to fill, would be taken to the puncher only by an adult cardholder. Later the cardholder (and perhaps through him the minor) would receive payment in the amount of credit accumulated on the heading card. While on occasion some of these minors were discovered and expelled from the premises by Gulf King employees, the district court found that many of them remained on the job throughout the 1964 and 1965 seasons. The court also found that in one instance a minor only fourteen years of age was issued a card in his own name and carried on Gulf King's payroll.

In 1962, 1963 and 1965, Gulf King was informed by the Department of Labor that its method of keeping records was inadequate. The district court also found that on two of these occasions Gulf King was notified that minors had been discovered working on its premises. While the defendant had repeatedly assured the Labor Department investigator that any violations would be corrected, the court concluded that compliance with the Act had not been completely successful and that an injunction against further child labor and record-keeping violations would be appropriate. Accordingly an injunction was issued pursuant to Section 17 of the Act. 29 U.S.C.A. § 217.

On this appeal Gulf King does not contest the fact that minors under the age of sixteen did in fact work in its heading shed.[6] However, appellant does contend most vigorously that these minors were not "employees" as that term is defined in the Fair Labor Standards Act. Alternatively, appellant argues that even if they were employees within the meaning of the Act, nonetheless the district court's conclusion in this regard was defective because it failed to make certain "essential" findings of fact. Appellant also maintains that the injunction should not have issued even if there were violations of the Act in 1964 and 1965 because there was no evidence that such violations would continue in the future.

---

5. Inasmuch as Gulf King's records contained information only in regard to employees who had been issued cards and no information concerning persons, adults or minors, who had worked under *another* person's card, these omissions would necessarily lead to record-keeping violations if the non-card holders were in fact "employees." See 29 C.F.R. § 516.2(a).

6. Pursuant to authority granted in 29 U.S.C.A. § 203(*l*), the Secretary of Labor has determined that under prescribed conditions minors between the ages of 14 and 16 years of age may be employed in certain occupations, but such occupations do not include "manufacturing, mining, or processing." 29 C.F.R. § 1500.33.

We direct our attention first to appellant's contention that the minors working in its heading shed at Conn Harbor were not "employees" within the meaning and intent of the Fair Labor Standards Act. Appellant recognizes that the Act defines an employee as including "any individual employed by an employer," 29 U.S.C.A. § 203(e) and it recognizes that "employ" is defined as including "to suffer or permit to work." 29 U.S.C.A. § 203(g). Appellant also concedes that in determining who is and who is not an employee under the Act, "common law employee categories * * * are not of controlling significance." Walling v. Portland Terminal Co., 1947, 330 U.S. 148, 150, 67 S.Ct. 639, 91 L.Ed. 809, 812. However, appellant maintains that to "suffer or permit" connotes a consciousness of the employment relationship and a condoning thereof. It argues that an employer must have actual knowledge that another is working for him in order for that other to be an "employee" under the Act.

██ The difficulty with appellant's argument is that it proves too much. It places the employment relationship, and through it the very coverage of the Act itself, at the mercy of an employer's subjective understanding. If records have not been kept, and if an employer has been discreetly aloof from those who have served his interest, he may under this argument disown knowledge of them and escape the Act. We cannot accept such a proposition. Employment under the Act is as much a matter of circumstance as it is of consensual agreement. A relationship may exist between two parties whether or not either or both of them give it express recognition. As said by the Supreme Court in Goldberg v. Whitaker House Co-op., 1961, 366 U.S. 28, 33, 81 S.Ct. 933, 936, 6 L.Ed.2d 100, 103: " 'economic reality' rather than 'technical concepts' is * * * the test of employment." "The determination of the [employment] relationship does not depend" upon "isolated factors but rather upon the circumstances of the whole activity." Rutherford Food Corp. v. Mc-

Comb, 1947, 331 U.S. 722, 730, 67 S.Ct. 1473, 1477, 91 L.Ed. 1772, 1778.

We begin with the precept enunciated in Lenroot v. Interstate Bakeries Corporation, 8 Cir. 1945, 146 F.2d 325, 328, that a corporation "must be held strictly accountable for the child labor violations of subordinates." As the court went on to say, relying on the words of Judge Cardozo in People ex rel. Price v. Sheffield Farms-Slawson-Decker Co., 1918, 225 N.Y. 25, 121 N.E. 474, 476:

> " * * * the mandate of the statute is directed to the employer and 'he may not escape it by delegating it to others.' The 'duty rests on the employer to inquire into the conditions prevailing in his business. He does not rid himself of that duty because the extent of the business may preclude his personal supervision, and compel reliance on subordinates. He must then stand or fall with those whom he selects to act for him. * * the duty must be held personal, or we nullify the statute * * *.' 'The cases must be rare where prohibited work can be done within the plant, and knowledge or the consequences of knowledge avoided' (ibid)." 146 F.2d at 328.

█ As the *Lenroot* case indicates, an employer's knowledge is measured in accordance with his "duty * * * to inquire into the conditions prevailing in his business." We are told that "The cases must be rare where prohibited work can be done within the plant, and knowledge or the consequences of knowledge avoided." With these principles in mind we need only inquire whether the *circumstances* of the present case were such that the employer either had knowledge that minors were illegally in his employ, or else had "the opportunity through reasonable diligence to acquire knowledge." People ex rel. Price v. Sheffield Farms-Slawson-Decker Co., *supra*, 121 N.E. at 476.

█ There are a number of circumstances discussed in the district court's

findings of fact which support the conclusion that Gulf King had the opportunity to acquire knowledge of the minors who worked for it. In the first place, as found by the court, all work done by the minors was done *on the premises*. This work was directed by Mr. James Bogan, manager of Gulf King's packing house, and supervisor of the heading shed. Bogan testified that he knew it was a common practice for more than one member of a family to "head" shrimp under *one* card. Despite the fact that the heading shed was of such a size that everyone in it could see everyone else (at the most, 100 persons), and despite the testimony of numerous workers that they were aware of the presence of minors, Gulf King would have us believe that its supervisor had no opportunity to make similar observations. Given the nature of his duties and the fact that he was alerted to the principal subterfuge by which minors were able to work, his alleged ignorance and lack of opportunity to acquire knowledge are not entirely credible. As said by the court in Lenroot v. Interstate Bakeries Corporation: "Although a plant * * * employing some 450 persons, is large and important, its personnel is not to be thought of as a confused mass of people among whom a stray or two may be unnoted." 146 F.2d at 328.

The district court found also that on two occasions between 1962 and 1965, investigators from the Department of Labor informed Gulf King that minors under the age of sixteen years were working as "headers." Assuming that Gulf King discharged its responsibilities under the Act by informing its supervisory personnel to be on the alert for child workers, their inability to detect minors in the heading shed begins to approach the miraculous.

Two further findings of fact made by the district court tend to establish that Gulf King suffered or permitted minors to work on its premises. First, there is the incontestable fact that one minor, Stephen Ramirez, was issued a shrimp heading card in his own name and was carried on the company payroll. At the end of each week, Ramirez was paid like any other header. In such circumstances it seems impossible for Gulf King to deny knowledge of the services which Ramirez rendered.

Secondly, the district court found that minors under the age of sixteen performed "the same services beneficial to Gulf King as did the other shrimp headers." This finding was important, for it established that the minors worked under the same rules and conditions as the other employees, cf. Rutherford Food Corp. v. McComb, *supra,* that the services they rendered were of a compensable nature, *cf.* Walling v. Portland Terminal Co., *supra,* and that they were dependent for their work upon the business which they served, *cf.* Bartels v. Birmingham, Collector, 1947, 332 U.S. 126, 130, 67 S.Ct. 1547, 91 L.Ed. 1947; Fruco Const. Co. v. McClelland, 8 Cir. 1951, 192 F.2d 241, 244, cert. denied, 342 U.S. 945, 72 S.Ct. 558, 96 L.Ed. 703. Each of these factors is an important part of the "economic reality" of employment. Collectively they are probative of the employer's state of knowledge, for it is not lightly to be presumed that an employer can remain ignorant for a protracted period of time of the personnel who openly, regularly, and within the framework of his business confer substantial benefits upon him.

In view of the foregoing, we do not believe that the underaged who worked for Gulf King were intrepid trespassers beyond the control and visual detection of company representatives. The regularity of the minors' presence, their work on Gulf King's premises, the obvious benefit of their services to Gulf King's processing operation, together with warnings from Labor Department investigators and the indisputable employee status of Stephen Ramirez, all indicate that Gulf King was not unaware of minors working in its business establishment. At the very least, the findings of the district court demonstrate that Gulf King's supervisory personnel had "the opportunity through reasonable diligence to acquire

knowledge" that minors were working on the premises.

While we do not expect geiger counters or the like to determine the presence of child laborers, neither do we find that passive acceptance of their work is permissible. It is a ridicule of reality to believe under the circumstances of this case that no responsible agent of Gulf King entering the heading shed could be oblivious to the presence of child laborers within. These children were not imposters or surreptitious intruders. If anything, they were regular and seasonal invitees beckoned by the foreknowledge that their presence would be tolerated, their labors accepted, and their ages ignored. So long as Gulf King indulged in conscious myopia and studied indifference, this illegal labor supply would have continued. We do not think that such circumstanced passivity is beyond the reach of the Act.[7]

This result is not affected by the cases to which Gulf King refers us. In Fox v. Summit King Mines Ltd., D.C., 48 F. Supp. 952, aff'd, 9 Cir. 1944, 143 F.2d 926, the court required that the employer's knowledge of overtime be shown only because the circumstances indicated that the employer could have observed his employees at work and still have had no inkling that their regular work hours had expired. Since the workmen were allowed to take their lunch hour whenever they chose, and did in fact take it at different hours of the day, any failure to take advantage of the free time which they were allotted was a matter exclusively within their knowledge and not readily accessible to the employer.

The case of Barras v. Salt River Valley, Water Users' Association, 9 Cir. 1957, 249 F.2d 952, cert. denied, 355 U.S. 890, 78 S.Ct. 262, 2 L.Ed.2d 189, is likewise inapplicable on the issue of knowledge. In that case the employer had little or no opportunity to learn that the wives of his employees were helping to discharge some of their husbands' duties. The wives worked, not on the company premises, but at small stations which were also their homes. No company personnel other than their husbands were present, and what small services the wives rendered to the company were found to be unnecessary to the efficient performance of their husbands' duties.

The case of Walling v. Portland Terminal Co., *supra* is also distinguishable. In *Walling,* the workers who were alleged to be employees covered by the Act were in fact apprentices participating in a company training program. The court found that "The applicant's work does not expedite the company business, but may, and sometimes does, actually impede and retard it." 330 U.S. at 150, 67 S.Ct. at 640. It concluded that broad as the meaning of the term "employ" might be as used in the Act, it could not be interpreted "to make a person whose work serves only his own interest an employee of another person who gives him aid and instruction." 330 U.S. at 152, 67 S.Ct. at 641.

As the foregoing discussion indicates, *Walling* can have no impact on the case at bar. Here, unlike in *Walling,* the district court found that the minors, when working, "rendered the same service beneficial to Gulf King as did the other shrimp headers." There is no claim that the work undertaken by the children laboring in Gulf King's behalf served only their own interest or was a form of on-the-job training. On the contrary, the work done by the minors was beneficial to Gulf King, was done with the expectation of compensation, was in fact paid for, and was done under circumstances indicating that the employer had the opportunity to acquire knowledge of their presence. Under

---

7. Inasmuch as we find that minors under the age of sixteen were in Gulf King's "employ," the conclusion of the district court that appellant was in violation of the record-keeping provisions of the Act, 29 U.S.C.A. § 211(c); 29 U.S.C.A. § 215 (a) (5); 29 C.F.R. § 516.2(a), must be sustained. The fact that no employment records were kept concerning those minors who worked on the premises (with the exception of Stephen Ramirez) is undisputed.

such circumstances it is not required that the person who performs the services be indentured as an employee in writing, or that an express consensual relationship exist between the parties. If the circumstances of the situation are such as to put the employer on notice, and if the services rendered are performed with the expectation of compensation, then provided the services are beneficial to the business operation, and the worker is not claimed to be an independent contractor, an employment relationship may be said to exist.

With these criteria in mind, the cases of Bowman v. Pace Co., 5 Cir. 1941, 119 F.2d 858; Walling v. Sanders, 6 Cir. 1943, 136 F.2d 78; Rogers v. Schenkel, 2 Cir. 1947, 162 F.2d 596; and Brown v. Minngas Co., D.C. 1943, 51 F.Supp. 363, all cited by appellant, are easily distinguishable. While as these cases indicate an express consensual relationship or wage agreement between worker and owner is a principal test of employment, it is not the *only* test. An obligation to pay for services may be "implied" from surrounding circumstances. Bowman v. Pace, Co., 5 Cir. 1941, 119 F.2d 858, 860. As said by the Supreme Court in Bartels v. Birmingham, Collector, *supra:*

> " * * * in the application of social legislation employees are those who as a matter of economic reality are dependent upon the business to which they render service." 332 U.S. at 130, 67 S.Ct. at 1550.

■ The findings of the district court in the present case carefully enumerated the "economic realities" of the relationship subsisting between underaged workers and Gulf King. It also properly denominated this relationship as one of employment. Upon such a state of the record we do not think it fatal to the court's decision that it did not also make an express finding that Gulf King had knowledge of the minors in its employ.

■ Appellant contends that a finding of knowledge was required by F.R. Civ.P. 52, which commands the district court to specially state its findings of fact and conclusions of law.[8] As we have stated, *supra*, however, all that need be shown under the Act is "an opportunity to acquire knowledge." Since the circumstances relative to appellant's opportunity to acquire knowledge were clearly stated by the district court, only its failure to label or collate those findings can be justifiably challenged. This we find is an objection more of form than of substance.

■ The purpose of F.R.Civ.P. 52 is to afford the appellate court a clear understanding of the basis of the trial court's decision. Featherstone v. Barash, 10 Cir. 1965, 345 F.2d 246. "The ultimate test as to the adequacy of findings will always be whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision." Carr v. Yokohama Specie Bank, Limited, 9 Cir. 1952, 200 F.2d 251, 255. "Findings may be sufficient if they permit a clear understanding of the basis of decision of the trial court, irrespective of their mere form or arrangement." Featherstone v. Barash, *supra*, 345 F.2d at 250.

■ In the present instance we encountered no difficulty in locating the issues which impelled the trial court's conclusion. Its findings of prior notice, work done on the premises, and one minor actually on the company payroll amounted to findings concerning Gulf King's "opportunity to acquire knowledge." The fact that these findings were not so labeled in explicit terms

---

8. F.R.Civ.P. 52:

(a) In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. Requests for findings are not necessary for purposes of review. * * *

is merely a question of "form or arrangement." Since the basis of the court's decision is not in doubt, no more need have been exacted. Courts need not indulge in exegetics, or parse or declaim every fact and each nuance and hypothesis. Here the predicates necessary to establish the employer's opportunity for knowledge were clearly established and amply supported by the evidence. The court's findings had substantiality and its conclusions had logical and factual underpinnings. More than that is not required.

Appellant addresses one final request to this Court. It asks that we free it from the injunctive interdiction imposed by the trial court even if we find that the Act was violated. Appellant argues that the evidence of past violations is not substantial, that the filing of this suit came long after the last claimed violation, and that in 1966 it instituted a screening system designed to prevent the underaged from working on its premises. Appellant also maintains that the injunction was lacking in the specificity required for injunctions by F.R.Civ.P. 65.

In answer to appellant's challenge to the sufficiency or substantiality of the evidence, we simply state that we have reviewed the record and find that the court's findings of fact are not clearly erroneous. F.R.Civ.P. 52(a); Wirtz v. Cincinnati, Newport & Covington Transport Co., 6 Cir. 1967, 375 F.2d 513.

We are likewise unimpressed with the fact that this suit was instituted in February, 1966, when the last violations were found to be in September, 1965. It is well settled that injunctions in cases such as the present one are proper even where all violations of the law have ceased at the time of suit. Goldberg v. Fritschy, W.D. N.C. 1961, 198 F.Supp. 743, reversed on other grounds, sub. nom. Wirtz v. DuMont, 4 Cir. 1962, 309 F.2d 152. Even apart from such principle appellant's statement that this suit was filed "long after the last claimed violations" is hardly supported by the record.

Finally, the fact that in 1966 Gulf King belatedly instituted a screening system by which to discourage child labor can have little if any redemptive force in the light of the total circumstances of this case. Appellant took no remedial action from 1962 through 1965, despite warnings from the Department of Labor. This fact alone raises doubt as to the substantiality of appellant's reform, and one continues to wonder, as did the court in Wirtz v. Atlas Roofing Mfg. Co., 5 Cir. 1967, 377 F.2d 112, why it took all those years for Gulf King to pronounce the words, "mea culpa." While such pious declarations would not of themselves compose a purge or cleanse the soul, they might, if coupled with timely action, be significant. Here, however, the redemptive words and acts of Gulf King are, to put it mildly, somewhat tardy.

In support of the district court's injunction, it must be said that this is neither a case of prompt compliance, cf. Walling v. T. Buettner & Co., 7 Cir., 133 F.2d 306, cert. denied, 319 U.S. 771, 63 S.Ct. 1437, 87 L.Ed. 1719, nor of candid confession minimizing the likelihood of future violations. Even at trial Gulf King's president did not believe there had been violations of the Act. Such selfdelusions of innocence only underscore the urgent need, both now and in the future, for injunctive process. cf. Mitchell v. Hausman, 5 Cir. 1958, 261 F.2d 778, 780.

Our court has not been timid in requiring injunctive decrees in Fair Labor Standards Act cases. Wirtz v. Mississippi Publishers Corp., 5 Cir. 1966, 364 F.2d 603. We have recognized that the Department of Labor "cannot reasonably be charged with the responsibility of checking back on past violators to make sure that they are obeying the laws." Goldberg v. Cockrell, 5 Cir. 1962, 303 F.2d 811, 814. In line with this recognition, we have not hesitated to reverse and remand for issuance of an injunction where district courts have declined injunctive relief. Wirtz v. B. B. Saxon Co., 5 Cir. 1966, 365 F.2d 457;

Wirtz v. Mississippi Publishers Corp., *supra*. Nor have we hesitated to require an injunction when the violations resulted from the employer's ignorance, or from his failure to find out the facts or law after the Secretary had asserted coverage. Mitchell v. Hausman, *supra;* Mitchell v. Blanchard, 5 Cir. 1954, 272 F.2d 574. Given these presumptions in favor of an injunction, once past violations have been established, *cf.* Mitchell v. Pidcock, 5 Cir. 1962, 299 F.2d 281, 287, it is only in the most compelling circumstances that the exercise of the trial court's discretion in granting an injunction will be annulled. Since no such compelling circumstances here appears, and since we are cognizant of the strong national policy in support of the child labor laws, Lenroot v. Kemp, 5 Cir. 1946, 153 F.2d 153; Goldberg v. Fritschy, *supra*, we find that the injunction against Gulf King was properly issued.

■■■ We also find that the injunction conformed to the requirements of F.R.Civ.P. 65(d).[9] Rule 65(d) requires that an injunction have specificity so that those constrained to follow it will not want for guidance. The injunction in question is not lacking in clarity.[10] Its interdiction of oppressive child labor is not vague, and its command that Gulf King keep and preserve records is clearly understandable. If for some reason Gulf King had doubts about the meaning of any part of the injunction, it could have sought district court clarification. McComb v. Jacksonville Paper Co., 1949, 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599.

■■■ The fact that the decree includes specific references to sections of the Fair Labor Standards Act is not, as here used, inconsistent with the requirements of Rule 65(d). It is significant that the injunction does not engraft the statute in gross, Cf. Fleming v. Salem Box Co., D.C. Or. 1940, 38 F.Supp. 997, or rely on the statute for clarification of what is otherwise unclear in the decree itself. It merely supplements specific instructions in the decree with the statutory authority from which the right to issue such instructions derives. The statutory material is thus given as a parenthetical reference, not as a substantive command.

No defect in the injunction being shown, the order of the district court is hereby affirmed.

Affirmed.

---

9. F.R.Civ.P. 65:
  *    *    *    *    *
  (d) Form and Scope of Injunction or Restraining Order. Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

10. The injunction reads as follows:
  "For reasons contained herein, it is ORDERED, ADJUDGED and DECREED that defendant, Gulf King Shrimp Company, its agents, servants, employees and all persons acting or claiming to act in its behalf and interest, be, and the same are hereby permanently enjoined and restrained from violating the provisions of sections 15(a) (4) and 15 (a) (5) of the Fair Labor Standards Act of 1938, as amended, in any of the following manners:

I.
  "Defendant shall not fail to make, keep and preserve records of its employees and of the wages, hours or other conditions and practices of employment maintained by it, as prescribed by the Regulations of the Administrator issued, and from time to time amended, pursuant to Section 11(c) of the Act and found in Title 29, Chapter V, Code of Federal Regulations, Part 516;

II.
  "The defendant shall not, contrary to Sections 12 and 15(a) (4) of the Act, employ any oppressive child labor (as defined in Section 3(*l*) of the Act) in interstate commerce or in the production of goods for interstate commerce."