**MUNICIPAL LEASING CORPORA- TION, Plaintiff–Appellant,**

v.

**FULTON COUNTY, GEORGIA, et al., Defendants–Appellees.**

No. 86–8832.

United States Court of Appeals, Eleventh Circuit.

Jan. 12, 1988.

Charles W. Surasky, Smith, Currie & Hancock, Stephen Gregory Joy, Atlanta, Ga., for plaintiff-appellant.

Alfred J. Turk, III, Arrington & Horne, Atlanta, Ga., for defendants-appellees.

William A. Clineburg, Jr., King & Spalding, David F. Guldenschuh, Atlanta, Ga., amicus curiae Intern. Business Machines Corp.

Before JOHNSON and CLARK,
Circuit Judges, and EATON *, Senior
District Judge.

JOHNSON, Circuit Judge:

This case comes to us as an appeal from a decision validating Fulton County's bidding procedure for a new computer system. The district court granted Fulton County's motion to dismiss Municipal Leasing Corporation's challenge to the selection process.

## I. FACTS

As required by law, Fulton County opened its search for a computer to bidding. A number of bids were received, and in the end, Fulton County awarded the contract to IBM.[1] Municipal Leasing Corporation (MLC) was one of the bidding companies passed over by the county, even though MLC had offered the lowest bid price. Claiming that Fulton County had violated Georgia law by not awarding the contract to the lowest responsible bidder, and claiming that Fulton County and IBM had engaged in certain improprieties in the bidding process, MLC sued Fulton County. The district court held that the bidding procedure and selection by the county were fully in order.

We consider the district court's decision in light of the Georgia Purchasing Agents Act, 1941 Ga. Laws 408, which regulates county purchases. Section 9 of the Georgia Purchasing Act provides that:

If the several parts of the work or labor to be done or the supplies, materials, and equipment to be furnished, or both, shall together involve the expenditure of more than five hundred ($500) dollars, such work or labor or supplies, materials or equipment shall be procured only by contract on public letting founded on sealed bids under such regulations as shall be made by the Board of Commissioners of Roads and Revenues or other county authority.... The agency letting the contract may reject all bids if it shall deem it for the interest of the county so to do; if

not, it shall, without other consent or approval, award the contract to the lowest responsible bidder.... Whenever a contract is awarded to another than the lowest bidder, the agency awarding the same shall file in its office and with said county authority a statement in detail of the reasons therefor.

1941 Ga. Laws 411.

Through preliminary research and assessments, Fulton County decided that the most appropriate computer system would be an IBM 3083EX or its equivalent. The county's requisition issued to request bids stated that the "specifications are intended to be open and non-restrictive. All bids will be considered if the item(s) bid on is identified in the space provided by brand name and is an equal, alternate, or substitute." The following areas were listed as relevant considerations in the final selection: price/performance, technical support, hardware maintenance, software maintenance, physical installation, planning, and support references. Additionally, the requisition required that for any used equipment being bid, the serial number should be stated.

The IBM 3083EX computer is the modernized version of the 3083E. For people who want to upgrade their 3083E, IBM has created an addition to the E that adapts the E to the same, faster speed of the EX. MLC believed that the 3083E with the special feature would technically fit Fulton County's bidding requirements. MLC bid a used 3083E with the improvement for $640,000. In its bid, MLC reserved the right to deliver either an E or an EX or to change serial numbers of the machine offered, "as long as they meet the conditions of the bid." IBM bid a new 3083EX for $1,233,480.

Fulton County decided to buy the 3083EX from IBM, but did not immediately notify MLC of the decision. Instead, in response to MLC's inquiries, Fulton County repeatedly said the evaluations were still

---

* Honorable Joe Eaton, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

1. IBM participates in this appeal as amicus curiae.

proceeding. MLC learned it had lost the bid only four days before IBM was scheduled to deliver the new computer on November 5, 1985. MLC immediately sought a temporary restraining order, which was denied because Fulton County insisted the entire system would crash if installation of the new computer was delayed.

At trial, the district court granted Fulton County's motion for an involuntary dismissal under Fed.R.Civ.P. 41(b). The court held that "the plaintiff has failed to show that the defendant violated any of the applicable bidding procedures, or that even if the procedures were violated that the plaintiff has any right to recover in in [sic] proceeding either by way of monitory [sic] damages or by equitable relief, . . . ."

## II. ANALYSIS

Our review of the district court decision regarding Fulton County's bid award to IBM for an upgraded computer system should look no further than whether the district court's decision was based on sufficient facts and was responsive to the material issues presented in this case, and whether the district court correctly applied the relevant law.

Rule 41(b) requires that a court granting an involuntary dismissal against a plaintiff shall make findings as provided in Rule 52(a). Fed.R.Civ.P. 52(a) requires that "the court shall find the facts specifically and state separately its conclusions of law thereon." In accordance, the district court in its ruling made a number of findings of fact and conclusions of law: (1) that Fulton County acted properly in evaluating the bids, (2) that Fulton County's lying to MLC was not actionable, (3) that MLC's machine was not equivalent to IBM's machine, (4) that MLC did not provide a serial number for the used machine it promised Fulton County, and (5) that Fulton County did not violate bidding procedures in choosing MLC's bid over IBM's bid.

Were these findings sufficient and not clearly erroneous, they collectively would support the district court's conclusion that Fulton County properly selected IBM over MLC. However, while we do not hold that any of the factual findings are clearly erroneous, we are concerned about the insufficiency of the ultimate finding that the overall bid decisionmaking was proper. In our review, we distinguish between the pre-bid aspects and the bid aspects of the purchase process. The latter is complete for appellate review while the former is not.

What is missing from the district court's decision are sufficient findings about the pre-bid stances of the parties in this case. Allegations made by MLC about pre-bid improprieties require a more explicit response from the district judge in order for us to undertake a valid review. We cannot blindly assume that fair starting positions of each side are subsumed under the ultimate finding that Fulton County acted properly—from start to finish—in evaluating the bids.

### A. THE BID ASPECTS

■ The district court provides some subsidiary facts and corresponding conclusions to support the finding of proper conduct. First, the court found that Fulton County lied to MLC after awarding the contract to IBM. But then it held such conduct unactionable. Second, the court found that conversion of a 3083E to a 3083EX would not guarantee serviceability. And it held that this difference made the bids not equivalent. Third, the court found that MLC lacked a serial number for a specifically identified computer and that MLC relied on its bid clause which allowed it to provide the general make of the computer without identifying the specific machine in advance.[2] The court then held that this position taken by MLC did not conform to the bidding requirements set out by Fulton County. These three findings and the implications drawn from them explain Fulton County's choice and process in awarding the contract to IBM—and they substantiate the district court's decision that choice

---

**2.** The original machine bid by MLC was sold before the contract was awarded and, although MLC maintains that it could and would have fulfilled its bid with an alternate machine, there was no actual machine representing MLC's bid at the time the contract was given to IBM.

and process were not improper. Once satisfied that Fulton County had based its preference on some legitimate reasons, the district court approved the outcome, apparently perceiving no need to state further findings regarding other evidence in dispute.

We are satisfied with the sufficiency of these findings about the bidding procedure. Specifically, the district court made a comparative evaluation of the 3083E and the 3083EX. The bid did not entail such highly technical evidence that the district court's findings fail to provide a sufficient guide for this Court on review. Greater detail about the comparative value of the models is not necessary for a determination of whether MLC's bid was "responsible."

A low bid can be defeated either by a finding of irresponsibility or of nonequivalence. This interpretation comes directly from the wording of the County Purchasing Act: "The agency letting the contract may reject all bids if it shall deem it for the interest of the county so to do; if not, it shall, without other consent or approval, award the contract to the lowest responsible bidder." 1941 Ga.Laws 411. Implicit in the discretion to reject bids must be an ability to set aside bids that are not equivalent in ways that significantly affect the interest of the county. According to the wording of the statute, relevant nonequivalence is a prior discretionary consideration which is not conditioned by the lowest responsible bidder requirement.

On review, this Court must ask whether the serviceability difference and the lack of an identifiable machine—two findings made by the district court—are sufficient to overcome the price difference between the IBM and MLC bids. This review does not require that every difference be "found" and exposed. The district court

judge relied on these two findings, and apparently considered them to be sufficient. That reliance was not clearly erroneous.

The magnitude of the decision being made by Fulton County elevated such concerns as verification of the existing quality of a specific machine as well as long term functioning and reparability of the installed system. Although performance levels of the 3083E and 3083EX could be made virtually indistinguishable at the time of bidding, the long term equivalence was less certain. IBM had discontinued manufacture of the 3083E. Because continued improvements developed by IBM are usually designed for the current line of computers, the chances of improvement were far superior for the 3083EX than for the 3083E. Additionally, IBM guarantees immediate servicing for new computers bought directly from IBM, while servicing for used computers drops to a lower priority.

If anything, Fulton County might be criticized for being overly risk averse in its decisionmaking, but the judge was not clearly erroneous in accepting such a cautious approach. The frugal objective of the County Purchasing Act does not compel exclusively short term planning horizons or improvident decisionmaking.

We are satisfied that the district court correctly applied the facts of the bidding procedure to Georgia law. Although the lowest responsible bidder requirement under the County Purchasing Act and Section 23–6–4 of the Fulton County Code[3] has been strictly applied, no Georgia case has held against the proposition that the lowest bidder may be passed over if it is determined that a higher bidder has a decidedly better product given the relevant specifications.[4] See, e.g., S.J. Groves & Sons Co. v.

---

3. Both state in relevant part: "The agency letting the contract may reject all bids if it shall deem it in the interest of the county so to do; if not, it shall, without other consent or approval, award the contract to the lowest responsible bidder.... Whenever a contract is awarded to another than the lowest bidder, the agency awarding the same shall file in its office and with said county authority a statement in detail for the reasons therefor."

4. An instructive analogy as to the applicable standard is the statute regulating the Georgia Department of Administrative Services. "[A]ll contracts ... shall, wherever possible, be based upon competitive bids and shall be awarded to the lowest responsible bidder, taking into consideration the quality of the articles to be supplied and conformity with the standard specifications which have been established and prescribed...." Ga.Code Ann. § 50–5–67(b) (Mi-

*Fulton County*, CA No. C82–1895A (N.D.Ga. Sept. 30, 1985); *Georgia Branch v. City of Atlanta*, 253 Ga. 397, 321 S.E.2d 325 (1984); *Mark Smith Constr. Co. v. Fulton County*, 248 Ga. 694, 285 S.E.2d 692 (1984). Thus a bid request is not intended to act as a binding offer open to unilateral acceptance. The county retains some discretion to consider its needs in evaluating the bids.

In this case, the interest of Fulton County in its purchase went beyond the mere physical product to include the accompanying services. It is in the nature of a feasible computer system that maintenance, training, and expertise are crucial considerations for an evaluation of product quality. Thus the district court's finding that the MLC computer and the IBM computer were not equivalent as to their certification and warranty status constituted a relevant factor to justify the award to IBM. It is also in the nature of the current computer industry that IBM, as innovator and standard setter, would be a source of expertise from the beginning for Fulton County.[5] Relevant to the quality of the bids, this reliance by Fulton County underscored the different status of MLC as only a leasing company, not a producing/servicing company.

The district court's additional finding that MLC did not supply a serial number for an alternate machine once the original computer in its bid became unavailable was also a relevant factor. A provision contained in Fulton County's request for bids stated:

> EQUIPMENT being sold that is used or not from the manufacturer must conform to the following specifications: ... serial numbers for the equipment bid must be stated.

Reference to the serial number was intended as a euphemism for conscientious selection of an identifiable product. Thus, submitting a serial number was not important for adherence to the letter of the provision per se. Instead, the serial number was valuable for what it would represent: a verifiable product with diminished purchasing risk. Stringent insistence that there be a current serial number was not a trivial matter, as the district judge recognized, because age and prior location could be relevant to quality.

Taken individually, these specific subsidiary findings of fact are not clearly erroneous and their interpretation under Georgia law was proper. Taken collectively, the findings of fact and conclusions of law support the district court's conclusion that Fulton County properly selected IBM over MLC. However, these findings and conclusions do not complete the proof.

## B. THE PRE–BID ASPECTS

Given the importance of the preliminary actions to the overall transactions, we are not in a position to accept the district court's silence on a number of points as tantamount to a finding that there were no pre-bid improprieties.[6] Our concerns that

---

chie 1986). Furthermore, "[t]he award shall be made to the responsible offeror whose proposal is determined in writing to be the most advantageous to the state, taking into consideration price and the evaluation factors set forth in the request for proposals. No other factors or criteria shall be used in the evaluation." *Id.* at § 50–5–67(a)(7). Although no cases appear to have been brought under these provisions, a number of attorney general opinions have delineated their scope. One opinion accords purchasers with considerable discretion and clearly authorizes the inclusion of factors other than price if the purchaser in good faith presents a demonstrable and real factor that justifies choosing a higher dollar bid as the lowest responsible bid. 1974 Op.Att'y Gen. No. 74–16.

5. MLC protests the early collaboration between Fulton County and IBM. Although unfortunate

for MLC's competitive position, the interaction may have been reasonable and to a certain extent even warranted for responsible purchasing. However, our assessment of this aspect is handicapped by the inchoate findings below. On limited remand, this is precisely the type of question the district court should explicitly consider.

6. However, the district court's silence on other points may imply a finding that a claim was meritless or irrelevant. There are also those facts which the parties did not dispute, and which therefore did not need to be affirmed individually. These included offers of bids by other parties, the original proposal by IBM which suggested a computer other than the 3083EX, and the status of MLC as a leasing company and not a full service company—each

lead us to remand are limited to the issue of pre-bid impropriety. We require explicit verification by the district court that the pre-bid interaction was acceptable and that the competitive bidding procedure was not rendered a sham by unacceptable arrangements between Fulton County and IBM.

Specifically, MLC alleges that Fulton County and IBM had an unusually and improperly close relationship. Fulton County denies the allegation and responds that it had contacts with manufacturers in addition to IBM prior to soliciting bids. IBM also denies the allegation and responds that any contacts it made with Fulton County were part of the standard operating procedure, and not an unusual marketing technique. The district court did not resolve this controversy with specific findings of fact.

Because of the sparse findings by the district judge, we are unable to consider whether Fulton County was simply going through the motions for its bidding procedure with IBM on an inside track, or whether it genuinely opened the selection process by soliciting bids. The legitimacy of the pre-bid procedures may be implicit in the district court's ruling, but we cannot be sure of the propriety of the process without a more assertive finding on this point.

## III. CONCLUSION

■ Findings must be sufficient to allow a reviewing court to determine rather than speculate that the law has been correctly applied.[7] *Hydrospace–Challenger, Inc. v. Tracor/MAS, Inc.*, 520 F.2d 1030 (5th Cir. 1975).[8] The undisputed facts and the district court's findings show legitimate factors underlying Fulton County's choice of computer. However, the only remaining area of ambiguity may render the district court's decision improper if resolved with a finding that there were pre-bid improprieties. Therefore, while it is not this Court's purpose to second guess the district court, the facts as found by the district court are insufficient in their assemblage to allow full appraisal of the law as applied.

We AFFIRM this case as specified in this opinion, except on the question of pre-bid improprieties we return this case on a LIMITED REMAND for supplemental findings and conclusions.

CLARK, Circuit Judge, concurring in part and dissenting in part:

I concur in Part B of the Majority Opinion and dissent from Part A of the opinion. In Part A the majority holds that the district court was correct in deciding that Fulton County's award of the contract to IBM was proper.

IBM's bid for the 3083EX machine was $1,233,480 and MLC's bid for the used 3083E was $640,000, a difference of $593,480. Available to an owner of a 3083E was

---

of which may have had some implicit bearing on the finding that the bidding conduct was proper. It is not to be expected or demanded that a district court state consensus points, as much as resolve contentious points.

**7.** On the other hand, "[c]ourts need not indulge in exegetics, or parse or declaim every fact and each nuance and hypothesis." *Gulf King Shrimp Co. v. Wirtz,* 407 F.2d 508, 516 (5th Cir.1969). It is not enough for an unelaborated matter to complicate review; under Fed.R.Civ.P. 52(a), "reversal is not necessary if a full understanding of the question presented may be had without the aid of such findings." *Rothenberg v. Security Management Co.,* 736 F.2d 1470, 1472 (11th Cir.1984).

**8.** Cases of this Circuit requiring broad remands were cases presenting much more fundamental deficiencies than are evident in this case. For example, in *Hydrospace–Challenger,* 520 F.2d 1030 (5th Cir.1975), imprecise language in the findings of fact did not allow the Court to review the judgment in terms of a precisely worded legal standard. The court below had also given no reason for its apportionment of damages, such that it was impossible to determine the validity of the theory upon which damages were awarded. In *Golf City, Inc. v. Wilson Sporting Goods, Co.,* 555 F.2d 426 (5th Cir.1977), the complex theoretical basis for an antitrust violation was left unarticulated, and a substantial, uncontradicted defense was left unaddressed. In *Rothenberg v. Security Management Co.,* 736 F.2d 1470, 1472–73 (11th Cir.1984), the reviewing court was concerned that "[i]n a case, such as this one, which has dragged on for more than six years and produced a voluminous record of thousands of pages, [bald assertions about motives] provide no meaningful basis for this court to review the ultimate finding of 'bad faith.'"

a modification furnished by IBM for approximately $100,000. This modification made the speed of the improved 3083E approximately the same as the EX. The only difference in the machines at that point was that the EX used less electricity. Obviously, the EX furnished by IBM was a new machine and the 3083E was a used machine. The expenditure of the $100,000 reduced the price differential to approximately $493,480. The following is the district court's findings of fact in their entirety; dictated upon completion of the plaintiff's case, and transcribed by the court reporter:

THE COURT: All right. It seems to me that, as this case perhaps demonstrates, any time the low bidder is not selected that you get a situation that's fraught with danger and comes very close or runs a chance of violating the Georgia law in regard to low bidder.

Now, apparently it's also—in this state the requirements on counties are much more stringent than they are on the state, and may be much more stringent than they are on the city, although I am not sure why that should be, but apparently that may very well be the case.

But however that may be, in this case I find and conclude that the evidence presented by the plaintiff has failed to establish that in awarding the bid to IBM the county engaged in any improper conduct.

I frankly don't understand the county's actions after the bid award in failing to tell the plaintiff the truth, and in many cases in making untrue statements. But I don't find that that conduct is actionable in this case, particularly in regard to the awarding of the contract.

I also find and conclude that the plaintiff has not proven that the E machine is equal to the E-X machine, but to the contrary, the plaintiff's credible evidence demonstrates and affirmatively establishs [sic] that an E and an E-X are *not equal in many respects* and that it would require an expendature [sic] of more than $100,000 to make them equal.

I also conclude that if an E was modified or converted to make it substantial-

ly equal to an E-X, there is no evidence that the resulting modification would be certified or warranted by IBM. Therefore, I conclude the county was correct, that the plaintiff's bid was not equivalent.

I also find and conclude that prior to an award of the contract to IBM, the used machine identified by the plaintiff by serial number in plaintiff's bid was no longer available to the plaintiff to be leased to Fulton County. The plaintiff did not furnish Fulton County any other serial number, and the plaintiff took the position that the plaintiff had the right to provide equipment without furnishing prior information about the serial number. I conclude that this position and this action by the plaintiff constituted a violation of the bidding requirements.

For each of the foregoing reasons, the plaintiff has failed to show that the defendant violated any of the applicable bidding procedures, or that even if the procedures were violated that the plaintiff has any right to recover in in [sic] proceeding either by way of monitory [sic] damages or by equitable relief, and the reasons I have just indicated, as well as an attempt to balance the equities and a lack of an indispensable party would prohibit plaintiff from receiving any of the equitable relief they have preyed [sic] for.

Therefore, the defendants' [sic] 41(b) motion is hereby granted.

Anything further, gentlemen?

(No response).

Record, Vol. 5 at 429–31 (emphasis added).

This case was decided by the district court at the close of the plaintiff's evidence pursuant to Fed.R.Civ.P. 41(b). This rule permits the trial court to render judgment on the merits against the plaintiff if the facts presented by the plaintiff and the law governing the case establish that the plaintiff has no right to relief. The district court found in the fifth paragraph of his order that an expenditure of more than $100,000 would make the machines equal. Modifying this in the next paragraph, he concludes that even if the E were modified

"to make it substantially equal to an EX," there was no evidence that the modification would be certified or warranted by IBM. However, there was no showing that a certification would be worth $493,480. Then the court concluded that MLC failed to provide a new serial number for a replacement machine and this violated the bidding requirements. Based on these reasons the district court concluded the plaintiff could not recover.

The district court failed to explain the reasons why the two machines were not equivalent when the price differential was approximately $493,480. Nor did the district court explain how the non-availability of the machine identified by MLC in its bid affected the bidding process. Part B of the majority opinion explains certain irregularities in the bidding process. The bids were opened May 22, 1985. MLC's bid was open for thirty days. Before the expiration of that time, the county informed MLC that it intended to award the bid to IBM because it wanted new equipment. The county did agree to consider any contentions that MLC might make that the machines were equivalent. From thence forward, MLC made efforts to demonstrate to the county that the modified 3083E would satisfy the county's needs at a savings to the county. In July, MLC sold the equipment it had identified in its bid. Its bid provided it could substitute one 3083E for an identical one or an EX. On August 15, 1985, the county awarded the contract to IBM but continued to discuss with MLC the latter's contentions about equivalency of the two machines. On November 1st, MLC learned that IBM had been awarded the contract and that delivery of the equipment would be made November 5th.

In *Golf City, Inc. v. Wilson Sporting Goods*, 555 F.2d 426 (5th Cir.1977) when discussing the district court's need to provide an appellate court with a proper predicate for reviewing its opinion, our court stated that "the findings of the trial court must be sufficiently detailed to give us a clear understanding of the analytical process by which ultimate findings were reached and to assure us that the trial

court took care in ascertaining the facts." Id. at 433.

The issue in this case is whether the defendant Fulton County complied with the Georgia statute governing competitive bidding. That statute requires a county to award a contract to the lowest responsible bidder. While it is implicit that the district court concluded that IBM was the lowest responsible bidder, there is no explanation by the court how that can be when there is a difference in the bids of $493,480. It may be that the evidence of the defendant would have shown that the new EX was indeed worth the differential when compared to a modified but used E.

The district court did not adequately explain the basis for its judgment. I would reverse and remand for a completion of the trial so that the county could offer evidence as to the reasons it awarded the contract to IBM at which time a court could find the credible facts and make a reasoned judgment.