Gerardo CASTILLO, et. al., Plaintiffs,

v.

CASE FARMS OF OHIO, Inc., et. al., Defendants.

No. DR 97–CA–89.

United States District Court, W.D. Texas, Del Rio Division.

March 23, 1999.

672

Lisa J. D'Souza, Selena N. Solis, Texal Rural Legal Aid, Inc, Weslaco, TX, for plaintiffs.

Dean E. Westman, Jeffrey J. Weber, Millisor & Nobil Co., L.P.A., Cleveland, OH, for defendants.

### ORDER

JUSTICE, Senior District Judge.

Trial in the above-numbered and entitled civil action is set down for trial on March 29, 1999, in Austin, Texas. On January 19, 1999, plaintiffs moved for partial summary judgment. On the same day, defendant also moved for partial summary judgment.[1] One week later, on January 26, 1999, defendant Case Farms moved to strike the affidavit of David G. Hall, and the related portions of plaintiffs' motion for partial summary judgment. Responses and replies have been filed by both parties. Each of these three motions will be considered herein.[2]

### Background

Defendant Case Farms of Ohio, Inc. ("Case Farms") is a chicken processing plant in Winesburg, Ohio, where live chickens are processed into market-ready packages of chicken parts. Case Farms employees perform a range of jobs, which Include eviscerating, deboning, receiving, grading, wrapping, weighing, and washing chickens. This civil action was filed against Case Farms by approximately thirty plaintiffs, most of whom worked for some period of time at Case Farms. Also named as defendants are D & S Career Services, Inc., doing business as America's TempCorps, and Patricia L. Daum, doing business as America's TempCorps, ("ATC Defendants"), although the plaintiffs have reportedly been unable to locate and serve the ATC defendants, to this point.

For the purposes of clarity, the plaintiffs have been separated by the parties into two groups: the "1996 Plaintiffs" and the "1997 Plaintiffs." The 1996 Plaintiffs are made up of Eloy Cantu, Gerardo Castillo, Efrain Leal, Rafael Gonzalez, Sergio Hernandez, Jose Guadalupe Estrada, Martin Hernandez, Esperanza Hernandez, Joseph Cooper, Hugo Hernandez, Jesus Mejia, Guadalupe Zamorano, Ricardo Zamorano, Raul Zavala, and Michelle Galvan. These plaintiffs were allegedly recruited by the

---

1. Both parties simultaneously filed motions to exceed the ten-page limit. Several such motions have been granted in this civil action.

2. This court has subject matter jurisdiction over this civil action pursuant to 29 U.S.C. § 1854(a), 29 U.S.C. § 216(b), and 29 U.S.C. § 1331 and § 1337. Supplemental jurisdiction over plaintiffs' common law claims may be exercised pursuant to 28 U.S.C. § 1367.

ATC Defendants in McAllen, Texas, to go to Ohio and work at Case Farms.

The 1997 Plaintiffs are Gustavo Caballero, Estela Carreon, Edgar A. Chavez, Americo Galvan, Carlos A. Gonzalez, Jose A. Guevara, Juan A. Jimenez, Cruz A. Martinez, Aurora Navarro, Juan Puente, Carlos Reyna, Tomas Solis, Israel Trevino, Juan Carlos Verastegui, Antonio Galindo Zamora, and Urbana Zavala, Yolanda Leura, and Edna Mae Chong. These plaintiffs were allegedly recruited in Eagle Pass, Texas, by Case Farms, to go to Ohio and work at Case Farms.

The basis for this civil action is the alleged mistreatment of plaintiffs in both the recruitment process in Texas and the working and living conditions provided upon their arrival in Ohio. Plaintiffs contend that defendants violated statutory rights of employees created by the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. § 1801 et seq., and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). Plaintiffs further allege that they have been subjected to defendants' breach of contract, fraud, and negligent misrepresentation in this matter.

Defendant Case Farms responds with a number of legal, and fact-based, denials. It is Case Farms' position that plaintiffs in this civil action do not qualify for the protections afford by the AWPA, that the ATC Defendants, rather than Case Farms, are responsible for whatever, if any, transgressions of the law that occurred, and that all of Case Farms' interactions with plaintiffs have been not only fair and honest, but in compliance with both state and federal laws.

Plaintiffs' motion for partial summary judgment is based solely on the legal issue of AWPA's application to plaintiffs. Defendants' motion for partial summary judg-

ment covers a number of legal and factual issues. Defendant Case Farms move for summary judgment on all claims against seven of the 1996 Plaintiffs,[3] and all of the 1996 Plaintiffs. As to the remainder of the 1996 Plaintiffs, Case Farms seeks partial summary judgment.[4] *See Def. Mot. for Part. Summ. J.* at 1.

### Summary Judgment Standards

Summary judgment is proper under Fed.R.Civ.P. 56(c), "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The substantive law underlying the claims in issue identifies which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When assessing a motion for summary judgment, the court must make all factual inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Hansen v. Continental Ins. Co.,* 940 F.2d 971, 975 (5th Cir.1991). Often, summary judgment allows the court to dispose entirely of one or more claims within the case. However, a court may also grant partial summary judgment by identifying any undisputed issues or material fact. Such facts are then deemed established for trial. Fed. R.Civ.P. 56(d); *see Belinsky v. Twentieth Restaurant, Inc.,* 207 F.Supp. 412 (S.D.N.Y.1962).

### Plaintiffs' Motion for Partial Summary Judgment

Through their motion for partial summary judgment, plaintiffs have effectively severed one of the key, threshold legal issues before the court: Are the plaintiffs

---

**3.** These plaintiffs include Eloy Cantu, Sergio Hernandez, Esperanza Hernandez, Joseph Cooper, Hugo Hernandez, Ricardo Zamorano, and Raul Zavala.

**4.** At this time, Case Farms is not seeking summary judgment for these particular plaintiffs with respect to their claims under the Fair Labor Standards Act.

and defendants in this civil action subject to the protections and responsibilities mandated by the AWPA? Plaintiffs maintain that they qualify under the AWPA's definition of "migrant worker," and that Case Farms qualifies under the AWPA's definition of "agricultural employer." Case Farms counters that the plaintiffs' work at Case Farms was neither "temporary" nor "seasonal," so as to exclude plaintiffs from the AWPA's regulatory protections of "migrant workers."

## A. The Migrant and Seasonal Agricultural Worker Protection Act

■ The Migrant and Seasonal Agricultural Worker Protection Act is a broad-ranging network of migrant and seasonal worker protections that requires, among other things, written and forthright disclosures in the workers' language at the time of recruitment. It prohibits false and misleading assurances concerning employment policies and practices, housing conditions, and transportation arrangements for workers. It also regulates housing and transportation standards. 29 U.S.C. § 1801 et seq.

The AWPA was enacted in 1983 to replace Congress' previous attempt (the Farm Labor Contractor Registration Act of 1963 ("FLCRA")) "to protect agricultural workers whose employment had been historically characterized by low wages, long hours and poor working conditions...." H.R.REP. No. 97–885, at 1 (1982), *reprinted in* 1982 U.S.C.C.A.N. 4547. According to Congressional records, the FLCRA "failed to reverse the histori-

cal pattern of abuse and exploitation of migrant and seasonal farm workers," 1982 U.S.C.C.A.N. 4549, and Congress reformulated its migrant and seasonal worker protections in the AWPA.[5]

■ Based on their employment patterns and skills, there can be no doubt that plaintiffs in this civil action may be fairly characterized as "migrant workers" in the common vernacular of South Texas.[6] Of course the law does not rely on loose colloquialisms, but rather creates supposedly more precise legal definitions. The AWPA defines a "migrant agricultural worker" as "an individual who is employed in agricultural employment of a seasonal or other temporary nature, and who is required to be absent overnight from his permanent place of residence." 29 U.S.C. § 1802(8)(A). The requirements for plaintiffs to qualify under the AWPA, therefore, can be delineated into three components. Plaintiffs must show that (1) they were employed in agricultural employment; (2) this agricultural employment was of a seasonal or other temporary nature; and (3) they were required to be absent overnight from their permanent places of residence.

## B. Plaintiffs as "agricultural employees" who are absent from their permanent residences

■ Defendant Case Farms does not, and cannot, deny its status under the AWPA as an "agricultural employer." At least since 1963, with the passage of the FLCRA, Congress has sought to protect migrant workers from unfair employment practices in poultry processing plants.[7] In

---

**5.** One of the primary areas of expansion of migrant worker protections afforded by the AWPA is that the statutory duties were expanded from "farm labor contractors" (under the FLCRA) to any person recruiting, employing, housing, or transporting workers, so long as such person was either a "farm labor contractor," or one of the two newly defined entities called "agricultural employers" and "agricultural associations." *See* 29 U.S.C. § 1802(1) & (2).

**6.** Indeed, plaintiffs' migrant lifestyle complicated discovery in this civil action.

**7.** That statute defined "migrant worker" as "an individual whose primary employment is in agriculture...." 7 U.S.C. § 2042(g) (*repealed*). "Agriculture," in turn, was defined by reference to § 204 of the Fair Labor Standards Act and § 3121(g) of the Internal Revenue Code. Both of these sections include reference to production of poultry in their definitions of "agriculture." 29 U.S.C. § 203(f); 26 U.S.C. § 3121(4)(A). In 1974

1984, Congress retained such protections when it revamped is migrant worker protection laws with the passage of the AWPA. 29 U.S.C. § 1801, *et. seq.* "Agricultural employment" was, once again, defined by reference to 29 U.S.C. § 203(f) or 26 U.S.C. § 3121(g), retaining those sections' references to poultry.[8] And further, under the AWPA, an "agricultural employer" is any person who "owns or operates a farm, ranch, [or] processing establishment. . . ."[9] Hence, as a poultry processor, Case Farms is clearly an "agricultural employer." *See Bracamontes,* 840 F.2d at 275.

■ Nor does defendant Case Farms contest the fact that plaintiffs, by traveling to Ohio from Texas, were required to be absent overnight from their permanent places of residence. Many of the plaintiffs left their families and homes in South Texas to travel to Ohio to work at Case Farms. Thus the first and third prongs of the definition of "migrant agricultural" worker under the AWPA are satsified.

## C. The "seasonal or temporary nature" of work under the AWPA

The gravamen of plaintiffs' motion for partial summary judgment, therefore, lies in the second prong of the definition of "migrant agricultural worker."[10] That is, the parties in this civil action strongly disagree as to whether the plaintiffs' work at Case Farms was "of a seasonal or other temporary nature."[11]

Case Farms' first line of defense to such a contention is that plaintiffs' employment at Case Farms was not "for a limited time," but was instead for an indefinite tenure. In fact, a number of plaintiffs, both in the 1996 and 1997 groups, have testified at their depositions that they understood that they could work at Case Farms indefinitely. *See Def. Case Farms' Mot. for Part. Summ. J.* at 12, 21. Case Farms' employee Andy Cilona,[12] who recruited some of the plaintiffs, has testified that he "encouraged them so they would stay, told them we had benefits and Just a

amendments, Congress added to the definition of agricultural employment "the handling, planting, drying, packing, packaging, processing, freezing, or grading prior to delivery for storage of an agricultural or horticultural commodity in its unmanufactured state." 7 U.S.C. § 2042(d) (*repealed*).

8. Even absent such statutory language, the plain meaning of "agriculture" would encompass poultry farming. "Agriculture" is defined by *Webster's New World Dictionary of the American Language,* 29 (1960), as "[t]he science and art of farming; work of cultivating the soil, producing crops, and raising livestock." And, as the United States Court of Appeals for the Fifth Circuit has stated in reference to the AWPA, "agriculture describes a broad activity. . . ." *Bracamontes v. Weyerhaeuser Co.,* 840 F.2d 271 (5th Cir.1988).

9. Perhaps even more dispositive of Congress's intent to include poultry processing as a regulated activity under AWPA is that statute's provision that exempts from its regulations "[a]ny custom poultry harvesting, breeding, debeaking, desexing, or health service operation *provided the employees of the operation are not regularly required to be away from their permanent place of residence other than during their normal working hours.*" 29 U.S.C.

§ 1803(f) (emphasis added). Such an exemption clearly establishes Congress's contemplation and inclusion of poultry processing as an agricultural activity under the AWPA.

10. The AWPA provides protections for both "seasonal" and "migrant" agricultural workers. Plaintiffs in this civil action are not candidates for "seasonal" worker protections because, under the statute, a "seasonal" agricultural worker "is not required to be absent overnight from his permanent place of residence." 29 C.F.R. § 500.20(r).

11. The Department of Labor's interpretive regulations define a temporary worker as one who "is employed for a limited time only or his performance is contemplated for a particular piece of work, usually of short duration." 29 C.F.R. § 500.20(s)(2). The regulations further provide that "[g]enerally, employment which is contemplated to continue indefinitely is not temporary." 29 C.F.R. § 500.20(s)(2). Plaintiffs argue that they are entitled to summary judgment as to their qualification as migrant employees under this definition.

12. Cilona was also the initial contact between Case Farms and unlocated defendant America's TempCorps.

good place to raise a family." *Cilona Dep.* 41. Other Case Farms employees have also testified to the year-round nature of employment, and that recruitment efforts reflected indefinite employment opportunities.[13] *See Kohli Dep.* 147; *Wilson Dep.* 20. It irrefutable that Case Farms' processing plant in Ohio is in operation year-round.[14]

Without refuting Case Farms' assertions, plaintiffs support their contention that they were "temporary" workers for the purposes of the AWPA by pointing to the consistently high turnover rates of Case Farms employees. Although the parties have stipulated to keeping the actual attrition rates of the Ohio processing plant under seal,[15] plaintiffs argued that "[s]hort periods of employment are the norm at Case Farms' plant where the average weekly turnover rate from 1994 to 1996, was estimated by Case Farms' former General Manager, Ezra L. Kohli, to between five and six percent." *Pl. Mot for Part. Summ. J.* at 9. (The evidence under seal provides yearly turnover rates at Case Farms.) Other Case Farms' employees have acknowledged the historically high turnover rates at the Case Farms processing plan, and that such high turnover is due to the nature of its business.[16] *See Kohli Dep.* 105, 125; *Cilona Dep.* 35–36, 117–118; *Wilson Dep.* 25–26, 29.

While a number of plaintiffs returned to Texas almost immediately upon arrival at the Ohio plant, the mean average length of employment as Case Farms for plaintiffs was 6.6 weeks. *Norton Aff.* at 4. The longest period of employment by a plaintiff was thirty-weeks, the shortest period of employment was one week. *Id.* Based on this undisputed information, plaintiffs contend that the "extremely high annual turnover demonstrates that, in reality, the nature of employment at Case Farms' processing plant was short-term or temporary." *Pl. Mot. for Part. Summ. J.* at 24–25.

■ As a preliminary matter, it is noted that the fact that Case Farms' plant operates year-round does not necessarily preclude plaintiffs' qualification as "migrant" employees. In *Caro–Galvan v. Curtis Richardson, Inc.,* 993 F.2d 1500 (11th Cir. 1993), the Court of Appeals for the Eleventh Circuit determined the plaintiffs in that civil action, who worked for a fern farm, qualified as "migrant" employees despite the fact that "ferns are harvested throughout the year and appellants could have worked for Richardson, and often did work, year-round." *Id.* at 1505. The court's reasoning was, in part, based on the fact that fern harvesting involves a slack season, during which employees harvested fewer ferns and performed other tasks. *Id.* at 1508. While this case does not set out bright-line rules for what degrees of fluctuation qualify as "seasonal," it does illustrate that the availability of year-round work does *not* necessarily disqualify plaintiffs as "migrants."

The critical question before this court, however, is whether plaintiffs' understanding that employment at Case Farms' was open-ended disqualifies them from "mi-

13. Case Farms Director of Sales and Marketing, Ezra Lee Kohli, served as General Manager for the Winesburg operation from June of 1994 until November of 1996. *Kohli Dep.* 9–10. Kohli testified that Case Farms' use of "temporary" employment agencies (such as America's TempCorps) to recruit employees, does not indicate that the employment positions were temporary. *Kohli Dep.* 147.

14. The degree and significance of fluctuations in its operations and productions during a given year are, however, subject to much dispute in this litigation.

15. Pursuant to a Stipulated Protective Order provided to this court on December 21, 1998, exhibits and affidavits containing turn-over rates have been filed under seal as Exhibits 36–38.

16. Among the factors presented as contributing to the high turnover rates at the Ohio plant are its location 30 to 40 miles from Canton, Ohio (where the closest practical housing is located), *Cilona Dep.* 93–95, and its isolation in the midst of several Amish and Mennonite settlements, *Kohli Dep.* 112–113.

grant worker" status for the purposes of the AWPA's protections.

■ It is first noted that the statute, via its descendant regulations, implicitly allows for workers employed indefinitely to qualify, in some instances, as "temporary agricultural workers." While the regulations make clear that "[g]enerally, employment which is contemplated to continue indefinitely is not temporary," 29 C.F.R. § 500.20(s)(2) (emphasis added), it is meaningful that the drafters included the word "generally"—indicating awareness that the proposition that indefinite work is not "temporary" will, at times, have exceptions. Such an exception has been presented to the court here.

■ Faced with such a close question as plaintiffs qualifications under the AWPA, it will be helpful to return to Congress' intent in passing the law. According to its preamble, the purpose of the AWPA is "to remove the restraints on commerce caused by activities detrimental to migrant and seasonal agricultural workers; to require farm labor contractors to register under this Act; and to assure necessary protections for migrant and seasonal agricultural workers, agricultural associations, and agricultural employers." 29 U.S.C. § 1801. Thus, with the AWPA, and its predecessor the FLCRA, Congress explicitly sought to regulate far-away employers' unfair treatment of migrating workers, regarding conditions of employment, housing and transportation. In Caro–Galvan, the Eleventh Circuit court also determined that Congress did not intend to narrow the class of workers protected by the FLCRA, which covered "field workers." Caro–Galvan, 993 F.2d at 1507.

■ In light of these clear Congressional intentions, it is determined that an approach analogous to, if not directly pursuant to, the AWPA and the Fair Labor Standards Act's "economic reality" concept is called for.[17] In regards to the often murky relationships among employers, labor contractors, recruiters, and employees, "the economic reality, not contractual levels, nor isolated facts .... determine employment...." 1982 U.S.C.C.A.N. 4553; see Gulf King Shrimp Co. v. Wirtz, 407 F.2d 508, 512 (5th Cir.1969); see also Usery v. Pilgrim Equipment Company, 527 F.2d 1308, 1315 (5th Cir.1976). Objective factors such as where the work was performed, whether it was an integral part of the production process, who had the opportunity for profit and risk of loss, and who had substantial investments in the production process are used under the "economic reality" test to determine liability. See Torres–Lopez v. May, 111 F.3d 633, 640 (9th Cir.1997); Hodgson v. Griffin & Brand of McAllen, Inc., 471 F.2d 235, 237–38 (5th Cir.1973). Such an approach has been utilized by courts to pierce the corporate insulation of go-between recruiters and hiring services sometimes used by agricultural employers to avoid liability under worker protection legislation. See, e.g., Antenor v. D & S Farms, Inc., 88 F.3d 925, 929–31 (11th Cir.1996); Torres–Lopez v. May, 111 F.3d 633, 638–39 (9th Cir.1997).

Defendant Case Farms, however, argues that the "economic reality" test is strictly limited to the question of whether there exists an employment relationship as opposed to an independent contractor relationship. While this is the context in which such a test is explicitly provided for, the plaintiffs, however, argue that an analogous approach is necessary to determine their status as migrants under the AWPA. The court agrees.

It is determined that the AWPA's clearly-stated intent, regulatory scheme, and legislative history require that an analogous "economic reality" test be applied in the case at hand. Whether or not such a process is labeled an "economic reality" test, the same form of objective factors analysis used to define employers, should

---

17. The AWPA incorporated the Fair Labor and Standards Act's "economic reality" test.

29 U.S.C. § 1802(5) (incorporating 29 U.S.C. § 203(g)).

here be used to define *employees*. In fact, Congress has made clear that the "economic reality" test ·is intended to be used "to determine employment relationships" under the AWPA.[18] 1982 House Rep. at 4553.

■ The prudence of using objective factors to determine the nature of employment under AWPA is well-established. *See Avalos v. La Conca D'Oro, Inc.,* 111 Lab. Cas. ¶ 35, 188, 46,118 (E.D.Pa.1988); *Ruggieri Mushroom Farms v. Sec'y of Labor, U.S. Dept. of Labor,* ALJ, No. 85–MSP–25, May 13, 1987, Lab.L.Rep., ¶ 31, 480 at 43, 860(CCH). In *Avalos,* a federal district court used objective evidence of turnover and variation in the demand for labor to find that plaintiffs qualified as migrant workers under the AWPA. *Avalos,* 111 Lab. Cas. at 46,120. In *Ruggieri,* an administrative law judge considered the "substantial turnover of employees" to qualify the plaintiffs as migrants. *Ruggieri* at 43,860. Once again, in the *Caro–Galvan* decision, the Eleventh Circuit reviewed objective factors, such as fluctuations in fern harvesting, to determine that the plaintiffs in that civil action qualified as migrant workers. 993 F.2d at 1508. Thus, based on Congress's intent in enacting the AWPA, and the courts' subsequent treatment of the statute, it is determined that the true and objective·economic reality of the plaintiffs' employment, rather than subjective intentions of either or both parties, must be considered to determine the nature of plaintiffs' work under the AWPA.

■ Upon consideration of the "economic reality" of the plaintiffs' position painted by the undisputed facts presented in this civil action, it is determined that plaintiffs do qualify as "temporary workers," thereby qualifying for legal definition of "migrant agricultural worker" under AWPA. It is unrefuted that in almost all, if not all, cases, plaintiffs left their families and permanent residences in Texas to go to Ohio to work. In some instances, plaintiffs were given bus tickets from Texas. They arrived, in most cases, without housing, transportation, or furniture. Once in Ohio, as mentioned previously, plaintiffs' stays were short, with a mean average length of between six and seven weeks. *N. Norton Aff.* at 4. Such temporary tenure was to be expected by defendant Case Farms, given its incredibly high yearly turnover rate. This court has considered the sealed turn-over rates of the Case Farms' plant in Ohio, and finds them compelling.[19]

With the AWPA, Congress intended to improve protections, previously provided by the FLCRA, for migrant workers, because "in many cases the contractor tends to exaggerate conditions of employment when he recruits workers in their home base or that he fails to inform them of

**18.** Plaintiffs further rely on a change in language between the AWPA and its predecessor the FLCRA. Under the older law, one might qualify as a "migrant worker" if he or she worked on a "seasonal or other temporary *basis.*" 7 U.S.C. § 2042(g) (1974) (*emphasis added* ). Upon enactment of AWPA, this language was changed to read "seasonal or other temporary *nature.*" 29 U.S.C. § 1802(8)(A) (*emphasis added* ). According to the plaintiffs, this change is significant in that it shows that a broadening of the regulatory protections afforded migrants. Defendant Case Farms discounts this argument as a mere "semantic exercise." *Def. Brf. In Opp. To Pl. Mot. For Part. Summ. J.* at 7.

The "temporary *nature* of employment" does carry a more objective and descriptive connotation than the phrase "temporary *basis* of employment,"—a phrase which implicates the understanding from which the employer and employee begin a relationship. Whether Congress intended such a subtle expansion of the definition of "migrant agricultural worker" is unclear from the statute on its face. This court depends instead, once again, on the clear intent of the AWPA to apply an "economic reality" test to the nature of the plaintiffs' employment in this civil action.

**19.** It is also noted that in the *Ruggeri* case, the ALJ considered "substantial" a relatively-low average turnover rate of approximately 75 percent, Lab.L.Rep. at 43,860, and used that information to determine plaintiffs' qualification as migrants.

their working conditions at all; tends to transport them in unsafe vehicles; fails to furnish promised housing or else furnishes substandard and unsanitary housing; . . ." H.R.REP. No. 97–885, at 1 (1982), *reprinted in* 1982 U.S.C.C.A.N. 4547. These are virtually the same allegations at issue in this civil action. Because the economic reality of the plaintiffs' position is that their work for Case Farms was of a temporary nature, it is determined that plaintiffs are "migrant agricultural workers" for the purposes of the AWPA. No genuine issue as to any material fact remains as to plaintiffs' qualification as migrant workers under the AWPA. Plaintiffs' motion for partial summary judgment will, therefore, be granted.

Having found plaintiffs' work for Case Farms of a "temporary nature," the issue of whether or not plaintiffs' work was "seasonal" will not here be reached. Defendant Case Farms motion to strike the affidavit of David Hall, purporting to show seasonal variations in labor practices at Case Farms, will, therefore, be denied as moot.[20]

### Defendant Case Farms' Motion for Partial Summary Judgment

Defendant Case Farms' motion for partial summary judgment encompasses a much wider range of issues than plaintiffs' motion. Case Farms, on almost every issue, claims that no genuine issues of material fact exist, and that the facts entitle it to judgment as a matter of law. It is determined, however, that genuine issues of material fact remain regarding each of plaintiffs' causes of action.

For the reasons set forth above, defendant Case Farms' contention that the AWPA does not apply in this civil action fails. Plaintiffs do, in fact, qualify as "mi-

grant agricultural workers" under the AWPA.

■ Case Farms also argues that because it did not "own or control" the housing provided for the plaintiffs in Ohio, it is entitled to summary judgment on plaintiffs' claims that it violated the housing provisions of the AWPA.[21] See 29 U.S.C. § 1823(a). However, "[t]o provide housing within the meaning of the AWPA, means to *make housing available*, procure housing, or furnish housing." H.R.REP. No. 97–885, at 1 (1982), *reprinted in* 1982 U.S.C.C.A.N. 4547, *(emphasis added)*. Given evidence of Case Farms' involvement with local landlords to arrange housing for employees, it is determined that there remain genuine issues of material fact as to the housing allegations. Whether Case Farms "owned or controlled," see 29 C.F.R. 500.130(c), plaintiffs' housing remains a contested issue of fact. *See Cilona Dep.* 157–60; *Lopez Dep.* 30–32.

■ Defendant Case Farms further seeks summary judgment regarding plaintiffs' FLSA claims on the grounds that plaintiffs misconstrue the nature of paycheck deductions. According to defendants, the amounts withheld were to repay advances made by defendants to third parties who provided plaintiffs with transportation and/or housing. Material issues of fact remain, however, as to plaintiffs' consent to such deductions, see, e.g., *Navarro Dep.* 30, *Martinez Dep.* 24, the use to which such deductions were put, and the appropriateness of deductions for necessary supplies, see, e.g., *Revino Dep.* 23–24, *Solis Dep.* 23, 30. Summary judgment on this issue, therefore, is inappropriate.

■ As to the 1996 plaintiffs, since there remain genuine issues of material fact regarding the relative roles and re-

---

**20.** The court will re-consider this motion, if re-urged, in the context of trial.

**21.** Plaintiffs have alleged three violations of the housing provisions under the AWPA: (1) failing to ensure that the housing provided to the plaintiffs complied with legal safety stan-

dards; (2) failing to obtain and post necessary certification of compliance with such standards; (3) and failing to post a statement of the terms and conditions of occupancy and housing.

sponsibilities the defendants in this civil action, Case Farms' motion for summary judgment as to breach of contract, fraud, and negligent misrepresentation must be denied as to those plaintiffs. Not only the nature of the alleged promises to the plaintiffs, but whether or not an agency relationship existed between ATC Defendants and Case Farms, and the actual scope of that relationship, must be adduced at trial. The evidence reveals a dispute as to the degree of control defendant Case Farms (relative to the ATC defendants) exercised over the 1996 Plaintiffs. It is further disputed whether the 1996 Plaintiffs performed an integral part of Case Farms' overall production process, a determination that will have bearing on determining liability, if any, between Case Farms and the ATC defendants. Similar uncertainties remain as to the degree of Case Farms' ownership and control of the property and facilities, as well as the wage rates and methods of payment of the 1996 Plaintiffs.

As to the 1997 plaintiffs, genuine issues of material fact remain as to the precise nature of the promises allegedly made by defendant Case Farms in its recruiting efforts. *See e.g., Cilona Dep.* 184; *Martinez Dep.* 9–12, 13–16, 23–24; *Guevara* 19–20, 28. Such issues are most appropriately resolved at trial.

For the foregoing reasons, defendants Case Farms' motion for summary judgment and partial summary judgment will be denied.

*Conclusion*

The Migrant and Seasonal Agricultural Worker Protection Act applies to the plaintiffs in this civil action. Accordingly, plaintiffs' motion for partial summary judgment should be, and is hereby, **GRANTED.**

Furthermore, because it was found to be unnecessary to reach the issue of the "seasonal" nature of plaintiffs' work for Case Farms, defendant Case Farms' motion to strike the affidavit of David Hall should be, and is hereby, **DENIED as MOOT,**

without prejudice to the reurging of such motion in the context of trial.

Finally, because genuine disputes of material facts remain as to each of plaintiffs' claims, defendant Case Farms' motion for partial summary judgment should be, and is hereby, **DENIED,** in its entirety.

It is so **ORDERED.**